## MAXWELL STEEL VAULT CO. v. NATIONAL CASKET CO.

### (District Court, N. D. New York. May 17, 1913.)

1. PATENTS (§ 328*)—VALIDITY—METAL.

    The Maxwell patents, No. 759,727, for a fastener for sheet metal caskets, and Nos. 759,728 and 800,930, each for sheet metal caskets, are not so clearly void on their face for lack of invention as to warrant dismissal of a bill for their infringement on that ground.

2. COURTS (§ 347*)—PLEADING—ALLEGATIONS OF BILL UNDER NEW EQUITY RULES.

    Good pleading as well as new equity rule 25 (198 Fed. xxv, 116 C. C. A. xxv) demands a plain and concise statement of the facts constituting the ground upon which the plaintiff asks relief without unnecessary recital or repetition. When more than one cause of action is stated in the same bill, they should be separately stated, but it is good practice in stating a second cause of action to refer to some prior allegation in the first to avoid repetition.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. § 347.*]

3. PATENTS (§ 310*)—SUIT FOR INFRINGEMENT—PLEADING.

    New equity rule 25 (198 Fed. xxv, 115 C. C. A. xxv), prescribing the contents of a bill, does not abrogate the established rule in infringement cases requiring the bill to allege compliance with Rev. St. §§ 4886, 4887 (U. S. Comp. St. 1901, p. 3382), and all facts necessary to show that the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

patentee was entitled to the patent and to negative the existence of those facts which would defeat the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 507–540; Dec. Dig. § 310.*]

4. COURTS (§ 347*)—NEW EQUITY RULES—PLEADING—"ULTIMATE FACTS."
The ultimate facts required to be pleaded in a bill by new equity rule 25 (198 Fed. xxv, 115 C. C. A. xxv) are the issuable facts, without proof of which complainant cannot recover.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. § 347.*

For other definitions, see Words and Phrases, vol. 8, p. 7144.]

In Equity. Suit by the Maxwell Steel Vault Company against the National Casket Company. On motion to dismiss under new equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), and also to strike out alleged impertinent and redundant matter. Motion to dismiss denied, and motion to strike out sustained in part.

Howard P. Denison and Eugene A. Thompson, both of Syracuse, N. Y., for complainant.

Staley & Bowman, of Springfield, Ohio, for defendant.

RAY, District Judge. The complainant sues to restrain alleged infringement of three several United States letters patent, the improvements described being capable of conjoint use, viz., United States letters patent No. 759,727, granted May 10, 1904, No. 759,728, granted May 10, 1904, and No. 800,930, granted October 3, 1905, all to John Maxwell. Nos. 759,728 and 800,930 are for improvements in sheet metal caskets and No. 759,727 is for fastener for sheet metal caskets.

[1] Claim 1 of No. 759,727 reads as follows:

"1. A clamping device comprising a base-plate, a link hinged to the base-plate and a cam-lever hinged to the link, swinging in a different plane from that of the link."

Claim 6 of No. 759,728 reads:

"A burial casket consisting of a sheet metal case having its upper edges of its sides and ends offset laterally and outwardly and depressed longitudinally to form lengthwise grooves, a packing in the grooves, and a lid resting on the packing and having a down-turned flange inclosing the offset edges of the case and means to clamp the lid to the case."

Claim 2 of No. 800,930, reads as follows:

"2. A burial case comprising bottom, side, end and corner pieces of sheet metal having interlocking flanges at their junction one with another, the flanges of the corner pieces being interlocked with those at the junctions of side and end pieces by a vertical sliding movement from the bottom upward, and additional flanges projecting outwardly from the upper edges of the side and end pieces and overhanging the upper ends of the corner pieces."

There are full drawings and specifications, and on reading the claims and specifications and inspecting the drawings it cannot be said that absence of invention is sufficiently plain to overcome the presumption of patentable novelty, etc.

I think Stilwell v. McPherson, 183 Fed. 586, 106 C. C. A. 354, is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an authority which compels a denial of the motion to dismiss on the ground presented and urged by defendant, viz.:

"The bill on its face does not constitute a cause of action in that the letters patent therein set forth, and each of them, are invalid upon their face for lack of patentable subject-matter."

The patents themselves are before this court on this motion, but the prior art not specified in or referred to in these patents is not. The defendant has not pointed out any article or structure which anticipates either of the patents in suit.

On the second branch of the motion the defendant asks the court to strike from the bill of complaint paragraphs 1, 2, 3, 5, 6, 7, 9, 10, 11, 14, 15. 16, 18, 19, and 20, which read as follows:

"(1) That heretofore, and before the 11th day of January, 1904, John Maxwell of Oneida, N. Y., became and was the sole, true, original, and first inventor or discoverer of certain new and useful improvements in fasteners for sheet metal caskets, not known or used by others in this country, and not patented or described in any printed publication in this or any foreign country before his invention or discovery thereof or more than two years prior to his application for letters patent therefor, and no application for any foreign patents having been filed more than seven (7) months prior to the filing of the application for letters patent in this country, and which improvements had not been in public use or on sale in the United States for more than two (2) years prior to his said application for a patent therefor, and not abandoned to the public.

"(2) That the said John Maxwell on the 11th day of January, 1904, being then as aforesaid the sole, first, and true inventor or discoverer of the said improvements in fasteners for sheet metal caskets, made application in writing to the Commissioner of Patents of the United States for the grant of letters patent upon said invention or improvements or discoveries, and prior to the granting of the letters patent next hereinafter mentioned duly complied in all respects with all of the conditions and requirements of the statutes of the United States in such cases made and provided.

"(3) That on the 10th day of May, 1904, after examination as to the novelty, patentability, and utility of said inventions and improvements, and upon payment of the fees required by law and upon due proceedings had and in compliance with the statutes of the United States in such cases made and provided, letters patent of the United States bearing date on that day were upon said application of John Maxwell issued to said John Maxwell granting to the said John Maxwell, himself, his successors or assigns, for the term of seventeen (17) years from the 10th day of May, 1904, the full and exclusive right and liberty of making, constituting, using, and selling throughout the United States and territories thereof the invention and improvements aforesaid, a description whereof was given in the words of the said John Maxwell in the schedule annexed to said letters patent and made a part of the same, and your orator prays that said letters patent may be deemed and taken as a part of this bill, to the original of which or a duly authenticated copy thereof now in your orator's possession and ready in court to be produced, your orator prays lief to refer; and your orator avers that said letters patent were duly recorded in the United States Patent Office as in such cases made and provided and all requirements duly complied with, requisite to the issuance of said letters patent.  *   *   *

"(5) That heretofore, and before the 22d day of January, 1904, John Maxwell of Oneida, N. Y., became and was the sole, true, original, and first inventor or discoverer of certain new and useful improvements in sheet metal casket, not known or used by others in this country, and not patented or described in any printed publication in·this or any foreign country before his invention or discovery thereof, or more than two (2) years prior to his application for letters patent therefor, and no application for any foreign patents having been filed more than seven (7) months prior to the filing of

the application for letters patent in this country, and which improvements had not been in public use or on sale in the United States for more than two (2) years prior to his said application for a patent therefor, and not abandoned to the public.

"(6) That the said John Maxwell on the 22d day of January, 1904, being then as aforesaid, the sole, first, and true inventor or discoverer of the said improvements in sheet metal casket made application in writing to the Commissioner of Patents of the United States for the grant of letters patent upon said invention or improvements or discoveries, and prior to the granting of the letters patent next hereinafter mentioned duly complied in all respects with all of the conditions and requirements of the statutes of the United States in such cases made and provided.

"(7) That on the 10th day of May, 1904, after examination as to the novelty, patentability and utility of said inventions and improvements, and upon payment of the fees required by law and upon due proceedings had and in compliance with the statutes of the United States in such cases made and provided, letters patent of the United States bearing date on that day were upon said application of John Maxwell issued to said John Maxwell granting to the said John Maxwell, himself, his successors or assigns, for the term of seventeen (17) years from the 10th day of May, 1904, the full and exclusive right and liberty of making, constituting, using, and selling throughout the United States and territories thereof, the invention and improvements aforesaid, a description whereof was given in the words of the said John Maxwell in the schedule annexed to said letters patent and made a part of the same, and your orator prays that said letters patent may be deemed and taken as a part of this bill, to the original of which or a duly authenticated copy thereof now in your orator's possession and ready in court to be produced your orator prays lief to refer; and your orator avers that said letters patent were duly recorded in the United States Patent Office as in such cases made and provided and all requirements duly complied with requisite to the issuance of said letters patent.    *    *    *

"(9) That heretofore, and before the 6th day of February, 1905, John Maxwell of Oneida, N. Y., became and was the sole, true, original, and first inventor or discoverer of certain new and useful improvements in sheet metal casket, not known or used by others in this country, and not patented or described in any printed publication in this or any foreign country before his invention or discovery thereof, or more than two years prior to his application for letters patent therefor, and no application for any foreign patents having been filed more than seven (7) months prior to the filing of the application for letters patent in this country, and which improvements had not been in public use or on sale in the United States for more than two (2) years prior to his said application for a patent therefor, and not abandoned to the public.

"(10) That the said John Maxwell on the 6th day of February, 1905, being then as aforesaid the sole, first, and true inventor or discoverer of the said improvements in sheet metal casket, made application in writing to the Commissioner of Patents of the United States for the grant of letters patent upon said invention or improvements or discoveries, and prior to the granting of the letters patent next hereinafter mentioned duly complied in all respects with all of the conditions and requirements of the statutes of the United States in such cases made and provided.

"(11) That on the 3d day of October, 1905, after examination as to the novelty, patentability, and utility of said inventions and improvements, and upon payment of the fees required by law and upon due proceedings had and in compliance with the statutes of the United States in such cases made and provided, letters patent of the United States bearing date on that day were upon said application of John Maxwell issued to said John Maxwell granting to the said John Maxwell, himself, his successors or assigns, for the term of seventeen (17) years from the 3d day of October, 1905, the full and exclusive right and liberty of making, constituting, using, and selling throughout the United States and territories thereof the invention and improvements aforesaid, a description whereof was given in the words of the said John Maxwell in the schedule annexed to said letters patent and made a part of

the same, and your orator prays that said letters patent may be deemed and taken as a part of this bill, to the original of which or a duly authenticated copy thereof now in your orator's possession and ready in court to be produced your orator prays lief to refer, and your orator avers that said letters patent were duly recorded in the United States Patent Office as in such cases made and provided and all requirements duly complied with, requisite to the issuance of said letters patent.   *   *   *

"(14) That the said inventions and discoveries, as patented as aforesaid, were and are of great utility, and that the same have been extensively introduced into public use and the public has acknowledged and acquiesced in your orator's exclusive right to the same and that the said John Maxwell was the original, sole, and true inventor or discoverer of the inventions set forth and claimed in said several letters patents.

"(15) That your orator is a corporation duly organized and existing under and by virtue of the laws of the state of New York and a citizen of said state having an office and place for the transaction of business at Oneida, county of Madison, and state of New York, within the Northern District of New York, and at said place manufactures and sells sheet metal caskets and fasteners for sheet metal caskets, embodying the inventions and improvements set forth in said letters patents, and that your orator has at all times stood ready and still stands ready and is able to supply all public demands for the use of said inventions, improvements, or discoveries of the aforesaid several letters patents, and that your orator has been obliged to expend large amounts in introducing and developing said inventions and in manufacturing under said several letters patents and selling the inventions so manufactured to the public.

"(16) That the several inventions and improvements described and claimed in and by said several letters patents and the several claims thereof pertain to the same subject-matter and are adapted to be used together as well as separately, and are capable of being embodied and used together in a single casket and have been and now are so embodied and used by the defendant.   *   *   *

"(18) That the defendant is a corporation duly organized and existing under and by virtue of the laws of the state of New York, a citizen of said state, and a resident and an inhabitant of the Northern District of New York, and has a regular and established place of business with agents engaged and conducting the same at Oneida, county of Madison, state of New York, within the Northern District of New York, and that said defendant is infringing the said several letters patents herein sued upon by the manufacture, use, and sale of caskets embodying the inventions and improvements described and claimed in said several letters patents as aforesaid.

"(19) That the defendant, its officers and agents, having had notice of the aforesaid several letters patents, and well knowing the premises and rights and privileges secured to your orator, and acting in conjunction with others and contriving to injure your orator, in order to deprive it of the profits, benefits, and advantages which might and otherwise would have accrued to it from said inventions, improvements, and discoveries of the said several letters patents, and without the license or permission of your orator, and against its will and protest and in violation of its rights in said several letters patents, has, since the issuing of said letters patents, and the assignment thereof as aforesaid, and prior to the commencement of this suit, and since notice, unlawfully and wrongfully manufactured and sold and caused to be manufactured and sold and is now manufacturing and selling and causing to be manufactured and sold within the Northern District of New York and elsewhere caskets embodying the inventions and discoveries set forth and claimed in said several letters patents; that the aforesaid unlawful acts and doings of the defendant constitute a violation and an infringement of said several letters patents and each of the same, and your orator's exclusive right and privilege in, to, and under the same; and said acts and doings of the defendant have resulted and are now resulting and will result, if continued unrestrained, in manifest and irreparable injury to the said rights of your orators in, to, and under said several letters patents.

"(20) That the defendant has made and realized large profits and advantages from its said infringement, but to what extent, and exactly how much, your orator does not know, and therefore prays discovery thereof. And your orator says that the use of the said inventions by· the said defendant and its continuation in the same, and unlawful acts in the premises, and disregard and defiance of the rights of your orator, have the effect to and do encourage others to venture to infringe said several letters patents in disregard of your orator's rights."

There are only 20 paragraphs in the complaint and to grant this motion would leave paragraphs 4, 8, 12, 13, and 17, which read as follows:

"(4) That the said letters patent were issued in the name of the United States of America and were signed by the Secretary of the Interior or his duly authorized assistant, and were countersigned and·sealed with the seal of the Patent Office by the Commissioner of Patents, and were numbered 759,727, and were delivered to the said John Maxwell; that after the issuing of said letters patent the said invention and said improvements were put into extensive use and such use is now being continued. * * *

"(8) That the said letters patent were issued in the name of the United States of America, and were signed by the Secretary of the Interior or his duly authorized assistant, and were countersigned and sealed with the seal of the Patent Office by· the Commissioner of Patents and were numbered 759,728 and.were delivered to the said John Maxwell; that after the issuing of said letters patent the said invention and said improvements were put into extensive use, and such use is now being continued. * * *

"(12) That the said letters patent were issued in the name of the United States of America, and were signed by the Secretary of the Interior or his duly authorized assistant, and were countersigned and sealed. with the seal of the Patent Office by the Commissioner of Patents, and were numbered 800,930 and were delivered to the said John Maxwell; that after the issuing of said letters patent the said invention and said improvements were put into extensive use and such use is now being continued.

"(13) That by an instrument in writing, dated the 17th day of January, 1911, duly signed, sealed, and delivered to your orator, said John Maxwell duly sold, assigned, and transferred unto your orator the entire right, title, and interest in and to the aforesaid letters patents and inventions, whereby your orator became and now is the full and exclusive owner of the aforesaid several letters patents and all rights thereunder, which said assignment or a duly certified copy thereof is here in court ready to be produced, and your orator begs lief to refer thereto. * * *

"(17) That since the granting of said several letters patents and the assignment thereof as aforesaid your orator has complied with the provisions of section 4900 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3388] by affixing upon the caskets containing said improvements and inventions so made by it, as aforesaid, the word "Patented," together with the respective days and years the said letters patents covering the inventions and improvements aforesaid were granted."

This would leave imperfect allegations of the mere issuance of the letters patent, an allegation of the assignment of same to the complainant, and an allegation that the word "patented," etc., has been placed on the patented caskets as required by section 4900 of the Revised Statutes. There would remain no charge of infringement by the defendant, and no allegation as to damages. This bill of complaint follows the forms and rules of pleading in vogue prior to the adoption of the new rules and may be said to be a model of that pleading. There is some surplusage and some repetition, but the motion is not aimed at this. The question is not what words or sentences can be

stricken out, but what paragraph or paragraphs as a whole can be safely eliminated, if any one can be.

It is obvious that this bill of complaint can be much abbreviated, as for instance it would be all-sufficient in the opening paragraph to say:

"Maxwell Steel Vault Company, the complainant above named, files this its bill of complaint and alleges and charges as follows."

Inasmuch as the corporate character and place of business and character of business carried on of both the complainant and defendant are fully set forth in subsequent paragraphs. It would also be all-sufficient to say that: .

. "Heretofore and on or before the filing of an application for the several United States letters patent hereinafter described and referred to John Maxwell became and was the sole and first inventor of the several improvements described and claimed in such letters patent, respectively, which improvements were both new and useful. That no one nor any of such improvements were known or used by others in this country or described in any printed publication in this or any foreign country before the invention or discovery thereof by said John Maxwell or more than two years prior to his application for letters patent therefor, respectively, and no application for any foreign letters patent therefor or for any one or more of same had been filed more than seven months prior to the filing of the application for letters patent therefor in this country, and no one of such improvements had been in public use or on sale in the United States for more than two years prior to said Maxwell's application for a patent therefor, and no one of such improvements and inventions had been abandoned to the public."

' Such an allegation would cover these points as to all three patents and avoid repetition.

Then, as to the application for and issuance of such letters patent, it would be all-sufficient to say:

"That on the 11th day of January, 1904, the said John Maxwell duly filed his application in writing and due form for letters patent for a new and useful improvement in clamping devices or fasteners for sheet metal caskets in the Patent Office of the United States, fully describing his alleged invention and making his claims therefor, and thereafter and on the 10th day of May, 1904, letters patent No. 759,727, for 'fastener for sheet metal caskets,' were duly issued on each application to said John Maxwell. That on the 22d day of January, 1904, said Maxwell duly filed his application in writing and due form for letters patent for a new and useful improvement in sheet metal burial caskets in the Patent Office of the United States, fully describing his alleged invention and making his claims therefor and thereafter and on the 10th day of May, 1904, letters patent No. 759,728, for 'sheet metal casket,' were duly issued on such application to said John Maxwell. That on the 6th day of February, 1905, said John Maxwell duly filed his application in writing and due form for letters patent for new and useful improvements in sheet metal caskets in the Patent Office of the United States, fully describing his alleged invention and making his claims therefor and thereafter, and on the 3d day of October, 1905, letters patent for 'sheet metal casket,' No. 800,930, were duly issued on such application to said John Maxwell. ' That each of said letters patent were issued in the name of the United States of America and signed by the Secretary of the Interior or his duly authorized assistant, and countersigned and sealed with the seal of the Patent Office and Commissioner of Patents, duly recorded, and delivered to said John Maxwell, and were so issued after due examination as to the novelty, patentability, and utility of the several inventions therein described and payment of the fees required by law, and each of said letters patent, respectively, granted to said John Maxwell and to his successors or assigns for the full term of 17 years from the date thereof, respectively, the full and

exclusive right and liberty of making, using, and selling the invention and improvements described therein respectively, and the complainant prays that said several letters patent may be deemed and taken as a part of this bill of complaint the same as though fully set forth herein, the original or a duly authenticated copy of same being now in its possession and ready in court to be produced and filed if required."

Then might follow the allegations of the bill as to the incorporation and corporate character of the parties, infringement, and damages and the prayer for relief. But should the pleader, where several patents capable of conjoint use are sued upon, follow this form of pleading, there are those who would say that the allegations as to each patent should be separate, full, complete, and distinct, even though the inventions are capable of conjoint use and are used conjointly. That the allegations as to each patent should be deemed a separate and distinct cause or ground of action and hence separately and fully stated. The bill as drawn is ' open to the objection that some allegations are repeated in different parts of the bill, and there are some recitals and some conclusions stated.

To instance, in subdivision 14, it is said:

"And that the said John Maxwell was the original, sole, and true inventor or discoverer of the inventions set forth and claimed in said several letters patent."

In subdivision 1, which refers to letters patent No. 759,727 (see subdivision 4), it is said:

"John Maxwell of Oneida, N. Y., became and was the sole, true, original, and first inventor or discoverer of certain new and useful improvements in fasteners for sheet metal caskets," etc.

And in subdivision 2, which relates to the same patent and invention, it is said:

"That said John Maxwell on the 11th day of January, 1904, being then, as aforesaid, the sole, first, and true inventor or discoverer of the said improvements in fasteners for sheet metal caskets," etc.

Here we have the same fact alleged twice and repeated the third time by way of recital. In subdivisions 5, 6, 9, and 10, we find the same repetitions as to the other patents.

[2] Good pleading demands a plain and concise statement of the facts constituting the cause of action or ground of equitable relief without unnecessary recital or repetition; and, when more than one cause of action is contained in the same bill, such causes of action should be separately stated, but it is good practice in stating a second cause of action to refer to some prior allegation in the first cause of action to avoid repetition. Rule 25 of the "New Federal Equity Rules" (198 Fed. xxv, 115 C. C. A. xxv) is intended to bring about this mode of pleading, and when done it will aid the court and save expense. Rule 20 (198 Fed. xxiv, 115 C. C. A. xxiv) provides for further and better particulars, and hence in the original pleading it is wise for the pleader to fully state the facts on which he relies, not the evidence proving the facts, so as to avoid motions for bills or statements of particulars.

[3] Sections 4886 and 4887 of the Revised Statutes, as amended by

Act March 3, 1897, c. 391, 29 Stat. 692 (U. S. Comp. St. 1901, p. 3382), read as follows:

"Sec. 4886. * * * Any person who has invented or discovered any new and useful art. machine, manufacture, or composition of matter, or any new and useful improvements thereof, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application, and not in public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor.

"Sec. 4887. * * * No person otherwise entitled thereto shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented or caused to be patented by the inventor or his legal representatives or assigns in a foreign country, unless the application for said foreign patent was filed more than seven months prior to the filing of the application in this country, in which case no patent shall be granted in this country."

Section 4888 (page 3383) relates to the requisites of the application, etc., and provides that, before a patent can issue, an application therefor must be filed. Section 4900 provides that patented articles must be marked as such, and that in case of failure so to mark damages cannot be recovered except on certain proof.

It has been held more than once that a bill for infringement of a patent to state a cause of action must not only allege the facts which are essential to the validity of the patent under these sections, but negative those which would defeat it. Elliott & Hatch Book Typewriter Co. v. Fisher Typewriter Co. (C. C.) 109 Fed. 330; American Graphophone Co. v. National Phonograph Co. (C. C.) 127 Fed. 349; Moss v. McConway-Torley Co. (C. C.) 144 Fed. 128; Blessing v. Copper Works (C. C.) 34 Fed. 753; Coop v. Institute (C. C.) 47 Fed. 899; Brake-Shoe Co. v. Detroit Steel & Spring Co. (C. C.) 47 Fed. 894; Goebel v. Supply Co. (C. C.) 55 Fed. 827; Hanlon v. Primrose (C. C.) 56 Fed. 601; Ross v. City of Ft. Wayne (C. C.) 58 Fed. 404; Hutton v. Seat Co. (C. C.) 60 Fed. 747; Diamond Match Co. v. Ohio Match Co. (C. C.) 80 Fed. 118; Wheel Co. v. Davie (C. C.) 100 Fed. 85.

Rule 25 says:

"Hereafter it shall be sufficient that a bill in equity shall contain in addition to the usual caption:

"First, the full name, when known of each plaintiff and defendant, and the citizenship and residence of each party. * . * *

"Second, a short and plain statement of the grounds upon which the court's jurisdiction depends.

"Third, a short and simple statement of the ultimate facts upon which the plaintiff asks relief, omitting any mere statement of evidence."

To properly state the name, citizenship, and residence of a corporation, it is essential to state the name under which incorporated and the authority under which incorporated and place of business.

The ultimate facts upon which the complainant demands equitable relief, an injunction and an accounting, are that the complainant is the

owner of valid, unexpired letters patent; that defendant has infringed and is infringing the same; that complainant has complied with the statutes, so he is in a position to assert his rights; and that defendant's infringing acts not only violate the complainant's rights, but occasion damage of such a nature and to such an extent that equity will interfere. Therefore the subdivisions of the bill of complaint as to the nature and character of the infringement and place where the wrongful acts are being committed are essential facts.

I do not think rule 25 was intended to do away with the necessity of alleging compliance with sections 4886 and 4887 of the Revised Statutes. In other words, it does not change the rule of pleading in patent cases stated in the cases above cited. If it does, then hereafter it will only be necessary to allege the issuing of the letters patent, describing them and the ownership of same and all the other facts will be presumed from the existence of that fact; there being a presumption that such letters patent are valid. All the numerous decisions seem to go on the theory that, to allege a good cause of action in a patent case, it is necessary to state all the facts showing that the patentee was entitled to the patent and to negative the existence of those facts which if existing would defeat the validity of the patent. That is, while the issue of the letters patent, and their presentation in court are prima facie evidence of their validity, this must be sustained by appropriate allegations in the bill of complaint showing that they were properly and legally issued to the first inventor, and, in effect, that there is no defense thereto of the character referred to. The forms for bills of complaint in patent cases given in the books all follow this procedure. See 3 Rose, Code Fed. Proc. c. 29, p. 2862; 4 Desty, Fed. Proc. 691. Whatever the reason for all these allegations in a bill in equity for infringement of a patent and for an accounting, I do not think the new rules were intended to change this settled practice.

The insertion of these allegations do not harm the defendant. If the pleading set out above is to be condemned to the extent asked, I think that condemnation should come from the Circuit Court of Appeals. Is the allegation of the issue of letters patent equivalent, under the new rules, to the allegations that the patentee was the first and true inventor of the invention therein described; that it was not patented and described in any printed publication in this or any foreign country before his invention or discovery thereof or more than two years prior to his application; and that it was not in public use or on sale in this country for more than two years prior to his application, etc.?

[4] If when it is alleged in a bill of complaint for an injunction and an accounting in a patent case that a described patent issued to a person named, it is presumed that the invention described is new, novel, and useful; that the patentee was the first and true inventor thereof; that it was not patented and described in any printed publication in this or any foreign country before his invention and discovery thereof, etc., then all these allegations are unnecessary, as the mere allegation of the issuance of the patent includes all the other allegations. Is the fact that the patent issued the "ultimate fact?" The other facts lead to this fact which could not properly exist without the others. In

Meyer v. School District No. 31, 4 S D. 420, 57 N. W. 68, 69, it is said:

"An ultimate or issuable fact * * * is one essential to the claim or defense, and which cannot be stricken from the pleading without leaving it insufficient."

Under the decisions, supra, nearly all the facts alleged in the bill of complaint cannot be stricken out without leaving it insufficient. In alleging a partnership it would be sufficient to say that on a certain day A. and B. entered into a copartnership agreement, etc. This would be the "ultimate fact" resulting from many other evidentiary facts perhaps, or evidenced by other facts. See Kahn v. Central Smelting Co., 2 Utah, 371, 375, 376. In First National Bank v. Swan, 3 Wyo. 356, 23 Pac. 743, 747, it was held that the words "ultimate fact" used in a statute making it the duty of the clerk of the court in which a suit is commenced to issue a writ of attachment on the filing by the plaintiff of an affidavit stating the ultimate facts means the grounds of attachment in manner and form as expressed by the statute. If so, then in the bill of complaint here the statutory facts necessary to a valid patent should be alleged. In Caywood v. Farrell, 175 Ill. 480, 482, 51 N. E. 775, 776, it was held:

" 'Ultimate facts * * * are, when considered with reference to the facts or evidence by which they are established or proved, but the logical results of the proofs, or, in other words, mere conclusions of fact,' * * * as, in an action for negligence, a finding that the plaintiff did not use ordinary care to avoid the injury or that the defendant was not guilty of willful or wanton injury, * * * or, in an action for fraud, a finding that the evidence does not show fraud."

In Read v. State Ins. Co., 103 Iowa, 307, 72 N. W. 665, 64 Am. St. Rep. 180, it was held: "Ultimate," as used in Code Iowa 1873, § 2807, providing that a special verdict must present the ultimate facts as established by the evidence, means: "The fact * * * found must be one inhering in, and necessary to determine in arriving at, the general verdict." In 39 Cyc. 663, it is said:

"Ultimate; at last; finally; at the end; last in the train of progression or consequences; tended toward by all that precedes; arrived at as the last result; final."

See, also, Levins v. Rovegno, 71 Cal. 273, 278, 12 Pac. 161.

In my opinion the mere allegation that on a certain day certain properly described letters patent issued to a person named as inventor would make it unnecessary to allege the filing of an application therefor, the examination by the Patent Office of those things the law makes it necessary to investigate that the patentee complied with the conditions and requirements for the issuance of a patent, and that the patent was issued by the Secretary of the Interior under seal, etc. It is presumed all these things were duly done; that is, the patent cannot lawfully issue until all these things are done, and, when the pleader alleges the issue of the patent by the proper authority, it is equivalent to alleging that the preliminary steps were taken. The ultimate fact is the issuance of the patent. In my opinion subdivisions 2, 6, and 10

can be stricken out as unnecessary. At least subdivision 2 can be made to read as follows:

"(2) The said John Maxwell on the 11th day of January, 1904 made application in writing to the Commissioner of Patents of the United States for the grant of letters patent upon said invention."

The recital as to his being the first inventor therein contained is unnecessary, as is the general statement that before making such application he had complied with all the conditions and requirements, etc. This last is a conclusion in any event. Subdivisions 6 and 10 can be amended in the same way.

The complainant may have 20 days in which to make, file, and serve an amended bill of complaint eliminating mere recitals and repetitions and conclusions, but may, if it so elects, make the allegations as to each patent separate and distinct.

The motions to strike out and dismiss must be denied, but the motion to strike out is granted in so far as to require the elimination of recitals, repetitions, and conclusions as above referred to.