BROOKS PAPER COMPANY *v.* UNITED STATES (No. 4686)[1]

[1] C. A. D. 495.

United States Court of Customs and Patent Appeals, June 30, 1952

*Sharretts, Hillis & Paley* (*Howard C. Carter, Edward P. Sharretts,* and *Louis J. Paley* of counsel) for appellant.

*Charles J. Wagner,* Acting Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

[Oral argument February 5, 1952, by Mr. Edward P. Sharretts and Mr. Weeks]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division (Reap. Dec. 7975) reversing the judgment of the single judge (Reap. Dec. 7739).

Appellant, the importer, appealed for reappraisement seeking to establish a certain foreign or export value, as defined in section 402 (c) and (d) of the Tariff Act of 1930, as the proper basis for determining the dutiable value of the merchandise here involved. Section 402 provides in part as follows:

SEC. 402. VALUE.

(a) BASIS.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

\*       \*       \*       \*       \*       \*       \*

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, \* \* \*.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, \* \* \*.

The merchandise is known as matrix board which was exported from Germany on October 7, 1936, and entered at the port of New York on October 16, 1936. The board was in sheets 24 inches long, 0.80 mm. thick, in widths of 20 and 16 inches. It was valued on the consular invoice at 60 pfennig per square meter and entered pursuant to the provisions of section 503 (b) of the Tariff Act of 1930, 19 U. S. C. § 1503 (b), at 80 pfennig per square meter less 3 per centum, packed.

The difference between the value set out in the consular invoice and the entered value is the amount added by the importer by reason of advances made by the appraiser in previous entries of similar merchandise, a duress certificate having been duly filed.

It is claimed by appellant that the correct value of the merchandise, representing both foreign and export values as statutorily defined, is 60 pfennig per square meter, net packed.

By statutory provision [1] Congress has directed that (1) the value found by the appraiser shall be presumed to be the value of the merchandise and (2) the burden shall rest upon the party who challenges its correctness to prove otherwise.

To sustain his burden of proof, and overcome this statutory presumption, it is incumbent upon appellant, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect. *United States* v. *Gane and Ingram, Inc.*, 24 C. C. P. A. (Customs) 1, T. D. 48264, citing *United States* v. *T. D. Downing Co.* (*George H. Sweetnam, Inc.*), 20 C. C. P. A. (Customs) 251, T. D. 46057. It is clear, from a reading of section 402 (c) and (d), *supra*, that in order to prove foreign value or export value as a basis for a valid reappraisement, *the appellant must establish, inter alia, the usual wholesale quantities* in which such or similar merchandise involved was freely offered for sale to all purchasers in the principal markets of the country from which exported, etc. This court has so construed the statute in the case of *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341, wherein we held that failure to satisfactorily establish the usual wholesale quantities constitutes a failure to establish one of the essential elements of a valid reappraisement. If appellant has failed to establish the usual wholesale quantities, then, in accordance with the foregoing, it seems clear that he has failed to meet his burden of proof, and the valuation set by the appraiser must stand. For reasons presently to appear, the outcome of this case depends on whether

---

[1] This provision appeared in section 501 of the Tariff Act of 1930, 19 U. S. C. § 1501, until June 25, 1948, when it was removed from that section to section 2633, Title 28, U. S. C.

appeallant has introduced substantial evidence to establish the usual wholesale quantities.

Appellant introduced in evidence, as plaintiff's Exhibit 4, an affidavit by one Hans Nitzsche, a director of a German company which manufactured and sold the involved matrix board for consumption in Germany and export to the United States. In that affidavit, the affiant declares, *inter alia:*

3) That matrix board is used by newspaper publishers in the production of the illustrated sections of the papers; that during the years 1934 to 1940, there were twelve manufacturers of matrix board in Germany; that four of them were large manufacture's [sic] and the balance were small manufacture's [sic]; that all of them were members of the "Verband Deutscher Feinpappenerzeuger e. V., Gruppe E" which had its headquarters in Berlin; that the "Verband" set up the following classification of purchasers and fixed the following prices and discounts in the early part of 1934 and these classifications, prices and discounts continued through the year 1940.

(a) Wholesalers_____ 80 Pfennige per square-meter less 25%
(b) Dealers_____ 80 Pfennige per square-meter less 15%
(c) Agents_____ 80 Pfennige per square-meter less 10%
(d) Newspapers_____ 80 Pfennige per square-meter net

4) That newspapers are ultimate consumers and do not purchase matrix board for re-sale; that the "agents" referred to above are selling agents of the manufacturer and are not purchasers of matrix board; the 10% discount referred to in the schedule is the agent's commission for selling the matrix board: that the "dealers" mentioned above usually purchase matrix board from the "wholesaler" mentioned above and sell only to the newspapers; the "wholesaler" sells mainly to "dealers"; that there are no restrictions whatsoever upon the re-sale of matrix board.

5) That the principal markets for the sale of matrix board, like that sold to the Brooks Paper Company, were Berlin, Hamburg, Frankfort, Munich, Leipzig, Dresden, Cologne, Stuttgart etc; *the great majority of sales of matrix board to purchasers other than consumers were in quantities of 15.000 square meters or more;* if a "newspaper" or a "dealer", as classified above, or any other person, placed an order for 15.000 squ. meters or more of matrix board, he would receive a 25% discount the same as a wholesaler.

\*　　\*　　\*　　\*　　\*　　\*　　\*

7) That the price fixed by the "Verband" for matrix board sold *for exportation* to the United States was 52 Pfennige net per square meter from 1934 to August 2, 1936; that the price fixed by the "Verband" for matrix board sold for exportation to the United States from August 2, 1936 through 1940 was 60 Pfennige net per square meter; that the above ment [sic] prices included the cost of all containers and coverings and all other costs, charges and expenses incident to placing the merchandise in condition, packed, ready for shipment to the United States, and were freely offered to all purchasers of 15.000 square meters or more of matrix board at Berlin, Hamburg, Frankfort, Munich, Leipzig, Dresden, Colonge, [sic] Stuttgart etc.; *that the great majority of the sales for export to the United States were in quantities of 15.000 square meters or more;* that there were no restrictions upon the re-sale of this matrix board in the United States. [Italics Supplied.]

Only those portions of the affidavit considered pertinent to a decision of this case are here set out.

Mr. Brooks, president of appellant company, also testified on its behalf. Among other things, that witness testified with respect to certain offers for sale which were introduced in evidence as plaintiff's collective Exhibits 2 and 3. The sole evidence introduced by the Government was a report by a Treasury Representative. We have examined with care the testimony of Mr. Brooks, plaintiff's Exhibits 2 and 3, and the report by the Treasury Representative and find nothing in any of those items of evidence relating to proof of the usual wholesale quantities. For that reason we think it unnecessary to set out in this opinion any of the details of that testimony.

The only testimony introduced in this case by either side which has any relationship to the usual wholesale quantities is to be found in the affidavit by Nitzsche, particularly in the italicized portions of items 5 and 7 set out above. It will be noted that item 5 pertains to foreign value and item 7 pertains to export value.

In the trial court, Government counsel objected, *inter alia*, to the italicized portions of the affidavit pertaining to the usual wholesale quantities on the grounds that such statements were conclusions and that there were no facts or evidence to substantiate such conclusions. At the close of plaintiff's case, Government counsel moved to dismiss the appeal on the ground that plaintiff had failed to prove all of the elements necessary to establish a value other than the appraised value, and therefore had failed to meet its twofold burden of proof under 19 U. S. C. § 1501, 28 U. S. C. § 2633, *supra*.

The trial court found the statement in plaintiff's Exhibit 4 that "the great majority of sales of matrix-board to purchasers other than consumers were in quantities of 15,000 square meters or more" was sufficient to establish that the usual wholesale quantity in which this merchandise was sold was 15,000 square meters or more; that it was immaterial that the statement excluded from consideration sales made to consumers, and that defendant's only evidence, the above-mentioned Treasury Representative's report, contained nothing therein to contradict the statement that the majority of sales in wholesale quantities were 15,000 square meters or more. It then concluded that appellant had sufficiently proven all elements necessary to establish foreign value under section 402 (c), including usual wholesale quantities. Accordingly, it held that appellant had sustained his burden of proof, thereby overcoming the presumption of correctness of the appraiser's valuation.

The appellate division, however, was of the opinion that there was "no evidence to support the finding that the usual wholesale quantity in which the merchandise was sold was 15,000 square meters except the bare statement in the affidavit of Hans Nitzsche (plaintiff's Exhibit 4)"; and that "such a statement, unsupported by evidence of

offers or sales, is a *conclusion* on the part of the affiant and has little probative value." [Italics supplied.] In view of this, and for certain other reasons [2] which we think it unnecessary to discuss in this opinion, the division concluded that appellant had not met his statutory burden of proof. It therefore reversed the trial court, making the following finding of fact and conclusion of law:

Findings of fact:

\* \* \* \* \* \* \*

4. That the evidence is insufficient to establish the usual wholesale quantities in which this merchandise was freely offered for sale to all purchasers in the principal markets of Germany.

On these facts, we make the following conclusions of law:

1. That the importer has failed to establish every element necessary for the court to make a valid appraisement.

\* \* \* \* \* \* \*

Other findings of fact made by the division are not in dispute. The issue on appeal, therefore, is whether the evidence of record is sufficient to establish the usual wholesale quantities. More specifically, the question before us is whether or not the italicized statements in the above-mentioned affidavit with respect to wholesale quantities are conclusions by affiant, as held by the division, or statements of fact which constitute such substantial evidence that they support the holding of the trial court. For reasons hereinafter discussed, we are of the opinion that the holding of the trial court is not supported by substantial evidence.

This court has established that the language "in the usual wholesale quantities," as used in section 402, *supra*, refers to that particular wholesale quantity which constitutes the "major portion of sales or offers for sale" in wholesale quantities. *United States* v. *M. Minkus,* 21 C. C. P. A. (Customs) 382, T. D. 46912; *Jenkins Brothers* v. *United States,* 25 C. C. P. A. (Customs) 90, T. D. 49093; *F. S. Whelan and Sons* v. *United States,* 39 C. C. P. A. (Customs) 168, C. A. D. 482. In view of this, it is our opinion that affiant's statement, above referred to, that "the great majority of sales \* \* \* were in quantities of 15,000 square meters or more" must be held to be nothing more than affiant's own conclusion of an *ultimate fact* which is an essential element of his case, namely, the usual wholesale quantities; this conclusion is unsupported by any *evidentiary facts* whatsoever. The fact that affiant did not use the statutory language but used the judicial equivalent thereof must be regarded as an immaterial matter of form rather than substance. It is because we consider this statement by affiant a mere conclusion of an ultimate issuable fact that we think it

---

[2] The appellate division further pointed out:
\* \* \* the statement in plaintiff's exhibit 4 excludes from consideration sales made to consumers. There is no evidence in the record to indicate whether or not sales to consumers were in wholesale quantities. If they were, they would have to be considered in determining what is the *usual* wholesale quantity. (Citing cases.) [Italics quoted.]

cannot be regarded as substantial evidence which will support the holding of the trial judge.

It appears to us that the basic error of the trial court lies in the failure to properly distinguish between *ultimate* facts and *evidentiary* facts. "Evidentiary facts" must be found from the testimony or other evidence. "Ultimate facts" are reasoned conclusions drawn from the evidentiary facts. *Commissioner of Internal Revenue* v. *Sharp et al.*, 91 F. (2d) 804, C. C. A. 3. Considered with reference to the facts or evidence by which they are established or proved, "ultimate facts" are but the logical results of the proofs, or, in other words, mere conclusions of fact reached by the processes of logical reasoning from the evidentiary facts. *Hickey et al.* v. *Ritz-Carlton Restaurant & Hotel Co. of Atlantic City*, 96 F. (2d) 748, C. C. A. 3. The ultimate facts are the *issuable* facts without proof of which plaintiff cannot recover. *Maxwell Steel Vault Co.* v. *National Casket Co.*, 205 F. 515; see also *United States* v. *Smith*, 39 F. (2d) 851, C. C. A. 1.

The Supreme Court has defined "substantial evidence" as evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Substantial evidence, said the Court further, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.*, 306 U. S. 292.

Under this test of substantial evidence we think it clear that a mere declaration of an essential ultimate fact in issue is not substantial evidence. As noted above, ultimate facts are to be deduced from evidentiary facts by inference, *Hickey* and *Revenue* cases, *supra*, and are the issuable facts which a complainant must prove to prevail, *Steel Vault* case, *supra*. This being the case, it seems clear that ultimate facts cannot at the same time also be the facts which afford a substantial basis of fact from which the fact in issue can be reasonably inferred. We believe these distinctions are implicitly recognized in the case of *National Labor Relations Board* v. *Hudson Motor Car Co.;* 128 F. (2d) 528, wherein the Circuit Court of Appeals of the Sixth Circuit discussed the interrelationship between "substantial evidence," "ultimate facts," and "primary" or "evidentiary" facts.

In view of the foregoing discussion, it seems to us an inescapable conclusion that affiant's statements pertaining to the question of usual wholesale quantities are merely statements of a vital issuable fact and hence only a declaration of an essential ultimate fact. Being such, we think that under the test laid down by the Supreme Court in the *Columbian Company* case, *supra*, such statements cannot properly be regarded as substantial evidence. It is within the jurisdiction of this court to so hold, for, although the weight to be attached to proper

evidence is the function of the trial and review courts below, whether or not there is substantial evidence to support a finding of fact by these tribunals is a question of law which may be determined by this court. *Sears, Roebuck & Co., et al.* v. *United States*, 30 C. C. P. A. (Customs) 10, C. A. D. 207; *United States* v. *Semon Bache & Co.*, 27 C. C. P. A. (Customs) 89, C. A. D. 67.[3]

Further, we think that certain prior holdings by this court, discussed below, compel the same conclusion.

In the case of *Semon Bache & Co.* v. *United States*, 28 C. C. P. A. (Customs) 166, C. A. D. 140, the third *Bache* case, this court considered the weight to be given to certain statements in a special agent's report which the Government introduced in evidence, apparently under the statutory hearsay exception provisions. The appellate division found that the importer's evidence was insufficient to establish the usual wholesale quantities. One judge of the division dissented on the ground that, notwithstanding this, the importer's contention with respect to usual wholesale quantities was supported by a portion of the above-mentioned agent's report, which was as follows:

*Usual Wholesale Quantity*—The usual wholesale quantity of the gauge glasses sold in the home market is from 4 or 5 cwt. on up when sold by weight, and from 12 dozen upwards when sold by dozens.

The majority of the division held that, in view of our rulings on the probative value of certain other items of testimony (discussed in the second following paragraph) in *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466, the first *Bache* case, this statement by the agent with respect to usual wholesale quantities was "merely a statement of his, unsupported, so far as this record is concerned, and based upon nothing except his own opinion." Because of this the majority of the division held that such statement was entitled to *no* probative value and stated that no weight was given to it in reaching its conclusion. With respect to this holding of the majority of the division, we stated "In this the appellate division was, in our opinion, clearly correct * * *"; we stated also that the above-discussed views expressed by the dissenter were not correct. In effect this court indicated that the statement in the report was to be given no weight because it was merely a conclusion of an ultimate issuable fact.

It is our belief that the question there involved was substantially identical with the question here involved, the difference between an affidavit and an agent's report being a completely immaterial one.

[3] The cases of *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466, *United States* v. *Semon Bache & Co.*, 27 C. C. P. A. (Customs) 89, C. A. D. 67, and *Semon Bache & Co.* v. *United States*, 28 C. C. P. A. (Customs) 166, C. A. D. 140, are companion cases which involved the same appeal to reappraisement. For convenience, these three cases will hereinafter be respectively referred to as the first, second, and third *Bache* cases.

Were we to uphold the trial court's holding on this question in this case, we do not see how this could be logically reconciled with our above-discussed expression of opinion on the similar question in the third *Bache* case, *supra.*

In the first and third *Bache* cases, *supra,* this court also considered whether certain portions of an affidavit introduced in evidence by the importer constituted substantial evidence. Affiant had set out in the affidavit, in considerable detail, pertinent evidentiary facts pertaining to sales, etc., for the purpose of establishing foreign value under section 402. Also included in the affidavit were statements by affiant that certain sales were not in wholesale quantities and that a given quantity was the usual wholesale quantity. This court held in the first *Bache* case, *supra,* that inasmuch as those statements were mere conclusions based upon facts appearing of record, they were not substantial evidence and should be given no weight by the courts below in determining the usual wholesale quantity of the merchandise in question, citing *Jenkins Brothers* v. *United States, supra;* we reaffirmed this holding in the third *Bache* case, *supra.* In these two *Bache* cases, this court also considered similar oral testimony by a witness for the importer presenting facts and conclusions much like those set out by affiant in the above-discussed affidavit; our holding in both cases was the same with respect to this witness' conclusions as it was with respect to affiant's.

We think the logical extension of these latter rulings in the first and third *Bache* cases, *supra,* requires that we hold that affiant's statement in this case pertaining to usual wholesale quantities is merely a conclusion of the witness which is not substantial evidence of the ultimate fact it seeks to establish. If such a statement of ultimate fact by a witness has no weight as substantial evidence when accompanied by detailed evidentiary facts, then *a fortiori* it should not have any weight as evidence when made in the complete absence of evidentiary facts. Were we to hold otherwise, we would put a premium on the withholding of evidence by the party challenging the valuation set by the appraiser. Moreover, by so holding we would in effect permit that party and his witnesses to usurp from the lower courts their authority and their duties under the law, for it is the duty of these tribunals, and not the witnesses, to determine from proper evidence what are the ultimate facts.[4]

Furthermore, the effect of such a holding would be to permit that party and his witnesses to decide important questions of law, thus transferring to such parties the function of this court as well as one

---

[4] This statement and statements of similar import elsewhere in this opinion are not to be construed as having any effect on prior holdings of this court as to the rights of the parties to agree upon and stipulate concerning ultimate facts under proper conditions. See *Pacific Trading Co.* v. *United States,* 19 C. C. P. A. (Customs) 361, T. D. 45508; *North American Mercantile Co.* v. *United States,* 18 C. C. P. A. (Customs) 74, T. D. 44030.

of the lawful duties of the tribunals below. In the absence of evidentiary facts, how can this court and the courts below know whether a witness has properly considered all the factors which enter into a proper determination of the usual wholesale quantities within the meaning of section 402? How would the court know whether or not he has properly considered and determined the legal effect of sales to retailers for resale, in accord with our holdings in *Jenkins Brothers* v. *United States, supra*, and the first *Bache* case, *supra*? It will be noted that the affidavit by Nitzsche also states in item 4 that there are four classes of purchasers, namely, "wholesalers," "dealers," "agents," and "newspapers"; that newspapers are the ultimate consumers and do not purchase for resale; that "dealers" usually purchase the matrix board from "wholesalers" and sell only to newspapers; and that "wholesalers" sell mainly to "dealers." It might possibly develop that in the light of relevant evidentiary facts not produced this court might regard the sales to dealers as analogous to sales to retailers, and that such would materially affect the outcome of the case. See the *Jenkins Brothers* case, *supra*, wherein this court differed with affiant for the importer as to the legal effect of certain sales to retailers for resale in determining the usual wholesale quantities under section 402.

Indeed, how would the court know whether or not the witness has properly determined what is the "great majority of sales" as this court has interpreted the term? For example, in the case of *F. S. Whelan and Sons* v. *United States, supra*, the importer produced evidence showing that in a representative period he had made 59 sales of plywood in carload quantities, 39 sales in less than carload quantities but over 5,000 feet, and 170 sales in less than carload quantities and under 5,000 feet. The importer there contended that the usual wholesale quantity, notwithstanding the major portion of sales rule of the *Minkus* case, *supra*, was carload lots because the 59 sales in carload lots amounted to a far larger percentage of the total sales in both total physical quantity and total monetary value than all the combined sales in less than carload quantities. Surely, under these facts, the importer could well have honestly asserted that the majority of his sales were in carload lots. Yet, on the basis of evidentiary facts presented by him, we held under the rule of the *Minkus* case, *supra*, that the sales in the usual wholesale quantity were the 170 sales in less than carload quantities and under 5,000 feet.

Attention is also called to the first *Bache* case, *supra*, wherein this court refused to give weight to an affiant's mere assertions that quantities less than a given quantity were not wholesale quantities on the ground that such statements were merely conclusions by affiant. In the absence of evidentiary facts, how are we to know whether the

affiant in this case properly disregarded sales in quantities of less than 15,000 square meters?

We don't know the answers to these pertinent questions because there are no evidentiary facts whatever in the record.

If we were to hold the trial court correct in this case, we would have the anomalous situation wherein the importer could have prevailed in the last three cases discussed if he had merely submitted his honest, though erroneous, conclusion as to what was the usual wholesale quantity without any evidentiary facts whatsoever.

In short, we would permit plaintiff to decide for himself important questions of law as well as to make his own inferences of fact if we were to hold that in an appeal for reappraisement a mere assertion by a plaintiff, or his witnesses, that a given quantity is the usual wholesale quantity is substantial evidence of that ultimate issuable fact. Moreover, such a holding would leave the Customs Court and this court no alternative but to surmise whether he has done so properly.

We see a further objection to the trial court's holding which we consider even more fundamental. Were we to affirm the holding of the trial court that statements of ultimate facts such as in this affidavit are sufficient evidence to overcome the presumption of correctness of the appraiser, this would in practice permit the party challenging the appraised value to nullify at his will the express mandates of Congress that the value of the appraiser shall be presumed correct and that the burden to prove otherwise shall rest on the challenging party. 28 U. S. C. § 2633, *supra*. The party appealing to reappraisement might then do this by the simple expedient of introducing "evidence" (*viva voce*, by affidavit, or otherwise) pertaining to each essential ultimate issuable fact, without introducing any evidentiary facts whatsoever. Under such a holding, it in fact would then become incumbent upon the defendant to introduce evidence to rebut plaintiff's "evidence" or else plaintiff would prevail.

This is not conjectural. It has actually happened in the trial court in this case. The appellant, plaintiff in the first instance, presented an affidavit containing a statement which, for reasons developed above, seems to us to be no more than a conclusion of one of the ultimate facts which he must establish in order to prevail. *Gane and Ingram*, *Downing*, and *M. V. Jenkins et al.* cases, *supra*. Notwithstanding Government counsel's objection that this was merely a conclusion by the affiant, the trial court held that since the Government had failed to contradict or rebut the affiant's statement that the great majority of sales were 15,000 square meters the plaintiff had met his statutory burden of proof and overcome the statutory presumption of correctness attaching to the appraiser's valuation. We think this latter holding of the trial court is clearly in error. Why should the defend-

ant here be required to contradict a mere statement of an ultimate issuable fact? If a plaintiff in a negligence case took the witness stand and testified that "defendant negligently hit my car and caused me damages to the extent of $10,000," and then rested his case, would there be any burden on defendant to present any contradicting evidence? Clearly not, for plaintiff has merely testified to the three ultimate issuable facts in a negligence case without presenting any evidentiary facts whatsoever. That hypothetical situation seems to us to be analogous to the case at bar.

Thus it seems clear that under the holding of the trial court if the plaintiff resorts, as he did here, to the simple expedient of introducing in evidence statements of ultimate fact only without any evidentiary facts at all, the burden of proof is in truth no longer upon him as Congress has directed. Instead, defendant has a burden to contradict plaintiff's "evidence," and the statutory presumption of correctness has in fact been vitiated. Clearly such a holding places in the hands of a plaintiff in such cases a simple means to frustrate at his will the express will of the Congress.

Appellant's right to introduce evidence by means of affidavit is not questioned here. Congress has expressly given him the right to do so. See 19 U. S. C. § 1501 and 28 U. S. C. § 2633. However, these statutory provisions merely provide certain exceptions to the hearsay rule, and there is no evidence that Congress by so providing intended to change other established rules of evidence which apply to this court as to courts of general jurisdiction. *W. T. Grant Company* v. *United States*, 38 C. C. P. A. (Customs) 57, C. A. D. 440. Hence, the fact that the statement in question was introduced by means of an affidavit in no way affects the substantive question of whether or not the said statement is substantial evidence of the ultimate fact it seeks to establish.

We think it proper to remark on two other items in the affidavit by Nitzsche.

From item 3 of the affidavit, set out above, it appears that the prices of the goods here involved were fixed by a German Bund. However, it seems clear to us that such testimony merely serves to establish the *price* of a particular wholesale quantity but is in no way any evidence of what the usual wholesale quantity is.

In item 5 of the affidavit, *supra*, affiant states that any purchaser could receive the discount given to a wholesaler upon the purchase of 15,000 square meters or more of matrix board. We think it clear that this statement does not in any way help to establish what the usual wholesale quantity is, but merely serves to indicate what the *price* is for this particular wholesale quantity. Although the goods are offered to all at the wholesale discount when purchased in that particular wholesale quantity, it does not logically follow that this quan-

tity must *necessarily* be the *usual* wholesale quantity. Notwithstanding this particular statement of affiant, we do not know the extent of sales in less than 15,000 square meters (see the first *Bache* case, *supra*) or whether affiant has properly considered the legal effect of sales to dealers (see the *Jenkins Brothers* case, discussed above) or whether affiant has properly determined what are the "great majority of sales" in the proper legal sense (see the *Whelan* case, discussed *supra*). We are still left to surmise whether affiant has properly determined the legal effect of important questions of law as well as fact.

In view of the foregoing, we think the decision of the trial court was in error. The appellate division was, in our opinion, correct in holding that the evidence is insufficient to establish the usual wholesale quantities and that appellant has therefore failed to establish all the elements necessary for the court below to make a valid appraisement. Accordingly, the decision of the appellate division reversing the trial court is *affirmed*.

JACKSON, J., and WORLEY, J., dissent.

JACKSON, J., sat during the argument in this case but retired April 1, 1952, before the opinion was fully prepared. He was recalled in conformity with Section 294 (c) (d), Title 28 U. S. C., to participate in the decision and did so.