[Nos. 5100 and 5122.]

IN THE MATTER OF THE ESTATE OF B. F. HEADEN, DECEASED.

HOMESTEAD, INHERITANCE OF. — If a declaration of homestead was filed on the separate property of one of the spouses while sec 1265 of the Civil Code was in force, and before it was amended, the surviving husband or wife takes the title to the homestead as surviving joint tenant, and not by descent, even if the other spouse dies after the amendment of 1874, which limited the title of the survivor.

APPEAL from the Probate Court, County of Santa Clara.

The children of Headen contested the widow's right to the homestead, and both the widow, Henrietta H. Headen, and the children appealed from the decree.

Sec. 1265 of the Civil Code, as amended in 1865, provided that the homestead, if declared on community property, should,

on the death of either of the spouses, vest in the survivor; but that, in other cases, on the death of the person whose property it was when selected as a homestead, it should go to his or her heirs, subject to the power of the Probate Court to assign the same for a limited period to the family of the decedent.

The other facts are stated in the opinion.

*S. F. Lieb*, for the Widow.

The query now is, " Are the widow's rights in the homestead governed by the laws in force when the homestead was created, or by the amended law passed thereafter, but previous to the death of deceased ? " The amendment of 1874 does not show on its face that it was intended to operate retrospectively on homesteads already created. It should not, therefore, have a retrospective operation. (Cooley's Const. Lim. 370, and 33 cases cited; *Dewey* v. *Lambier*, 7 Cal. 347 ; *Greer* v. *Blancher*, 40 Cal. 194; *Gates* v. *Salmon*, 28 Cal. 320 ; *Thorne* v. *San Francisco*, 4 Cal. 127.)

Our position is that it was the act of the party under the law in reference to his own property, and not the law itself, that vested the wife as joint tenant. ( *Cohen* v. *Davis*, 20 Cal. 195.) The wife was as much the owner of the land when the declaration of homestead was filed as she ever could have been upon the death of the husband, even had the law remained unchanged.

" The interest which a joint tenant has as a survivor is not a new one acquired by him from his cotenant upon the latter's death, *for his own interest is not changed in amount, but only his cotenant's is extinguished.*" (1 Wash. Real Prop. 557.)

The Legislature could not take away the rights of a joint tenant, even though it gave the rights of a tenant in common in return. (*Dewey* v. *Lambier*, 7 Cal. 347 ; *Greer* v. *Blanchar*, 40 Cal. 194.)

*D. W. Herrington*, for the Children.

The order is an attempt to create a freehold estate in the property of the heirs of the deceased, which is greater than any estate or interest created by law in favor of or authorized to be

set apart or assigned to petitioner in her several right for her sole use, or the use of the family of the deceased. (Civil Code, sec. 1265, as amended; Code Proc. 1474, as amended.) This right is a mere rule of descent. (Cooley's Constitutional Lim. 3d ed. pp. 358 to 361, citing *Mayor, etc.* 8 N. Y. 110; 1 Kent's Com. 455.) The powers of the Probate Court to dispose of the homestead carved from the separate estate of the deceased husband, dedicated as such before his death, extends under the Codes, as they have existed since 1874, only to setting the same apart to the heirs of the deceased permanently, with a discretionary authority to assign the same to the use of the family during the progress of the administration.

*J. J. Burt,* also for the Children.

The law, as it stood at the time of the filing of the declaration of homestead, did not vest in the wife a *complete* joint-tenancy with its grand characteristic, the *jus accrescendi;* the survivor took not by virtue of the *jus accrescendi,* but by way of *descent.* See *Rich* v. *Tubbs,* 45 Cal. 34; *Johnston* v. *Bush,* 49 Cal. 202, speaking of the homestead as a *sort* of joint-tenancy; and see, also, Civil Code, sec. 1265, before amendment, saying the homestead " *descends* to and vests in the *survivor.*"

By the Court, Rhodes, J.:

Headen and wife, on the 29th day of June, 1873, filed a declaration of homestead on the separate property of the husband. Headen died in August, 1875. The appraisers of the estate of Headen set apart a portion of the land described in the declaration of homestead, not exceeding $5,000 in value, to the widow of the deceased; but the Probate Court ordered such tract to be set apart for her life only.

When the declaration of homestead was filed, the provisions of sec. 1265 of the Civil Code, respecting homesteads, as first adopted, were in force. They are in effect that from the filing of the declaration, if made by a married person, the " land is thereafter by the spouses held in joint tenancy; and on the death of either of the spouses, and subject to no other liability

than such as exists or has been created under the provisions of this title, it descends to, and the title at once vests in the survivor." The provisions of the probate law then in force (Code Civil Procedure, sec. 1474) was in accord with the Civil Code, and provided that on the death of the husband or wife the homestead should vest absolutely in the survivor.

There can be no question that the homestead property, to the extent of $5,000 in value, would have vested absolutely in the surviving wife had the husband died while the above mentioned provisions of the Codes were in force ; but it is contended that the provision of the Civil Code that the homestead property " descends to, and the title at once vests in the survivor," and the provisions of the Code of Civil Procedure that the homestead property " vests absolutely in the survivor," are in truth statutes of descent—or, as denominated in the Code, Statutes of *Succession*—and that upon the death of either spouse the title will go to the person entitled thereto, according to the Statute of Succession applicable to such property in force at the time of the death of such spouse; that is to say, in accordance with sec. 1265 Civil Code, as amended in 1874, by which the title in this case would go to the heirs of the deceased husband, subject to the power of the Probate Court, to assign the property for a limited period to the family of the decedent.

If those provisions of the Civil Code that the property " descends to, and the title vests at once in, the survivor," and that of the Code of Civil Procedure that the property " vests absolutely in the survivor," amount only to statutes of succession, then the position that sec. 1265, as amended in 1874, is applicable as a statute of succession, is correct. (*Rich* v. *Tubbs*, 45 Cal. 34.) But if these provisions only declare the operation and effect of the making and filing of the declaration of homestead—merely define the interest which the spouses severally acquire and hold by virtue of such declaration—then the amendatory section has no application in this case, and does not impair or affect the right or title which the wife acquired upon the filing of the declaration of homestead.

It was provided by sec. 1265 Civil Code, before the amendment of 1874, that "the land is thereafter by the spouses held

in joint tenancy." One of the necessary incidents of a joint tenancy is the right of survivorship—the *jus accrescendi*—and the provision that upon the death of one of the spouses "the title at once vests in the survivor" adds nothing to the legal quality of the estate held by the spouses, but simply declares the result which must necessarily ensue upon the death of one of the joint tenants. The right of survivorship is the grand incident of a joint tenancy, and by its operation, where two or more persons are seized of a joint estate, the entire tenancy, upon the decease of one of them, remains to the survivors, and at length to the last survivor, and he shall be entitled to the whole estate, whatever it may be." (2 Black. Com. 184; Freeman on Co-tenancy, sec. 12.) The Code of Civil Procedure, sec. 1474, then in force, provided, as already remarked, that the home-stead, upon the death of either spouse, "vests absolutely in the survivor." This provision and the other provisions of that and the two succeeding sections are entirely consistent with the theory that the homestead survives to the surviving spouse.

There would be no room for doubt as to the proper construc-tion of sec. 1265, Civil Code, were it not for the insertion, in the clause above cited, of the words "descends to." The Code has employed the word "succession" in place of the word "de-scent," which had been employed in the statutes prior to the Codes. The Civil Code, sec. 1383, defines succession as fol-lows: "Succession is the coming in of another to take the prop-erty of one who dies without disposing of it by will"; and in providing for the transmission of the estate by succession, the Code declares that the estate "is succeeded to" by the heirs, "is distributed to" or "goes to" or "comes to" them, and that the heirs "take," "share," or "inherit" the estate; but the word "descend or descent" does not appear to have been em-ployed in that statute, in defining the succession of the different classes of heirs to the estate. We are of the opinion that both the phrases "descend to" and "vest in" merely express the operation of the rule of survivorship which is necessarily inci-dent to a joint tenancy, and that they do not furnish any other or different mode for the transmission of the estate.

It is proper to say that this construction is not in conflict with

the doctrine of *Rich* v. *Tubbs*, 45 Cal. 34. The fourth section of the Homestead Act of 1860, which was involved in that case, is clearly a statute of descent and distribution, as applicable to property which had been appropriated as a homestead. The Homestead Act of 1862, which provided that the homestead property should vest absolutely in the survivor, was not involved in that case, and it was unnecessary to determine whether the survivor took by descent, or as the surviving joint tenant.

Order reversed and cause remanded for further proceedings in accordance with this opinion.

Neither Mr. Chief Justice WALLACE nor Mr. Justice McKINSTRY expressed an opinion.