[No. 9055. In Bank. — November 22, 1886.]

MARY REBECCA LEVINS, Appellant, *v.* STEFANO ROVEGNO et al., Respondents.

Homestead — Death of Wife — Right of Surviving Child — Finding — Conclusion of Law. — The action was brought to recover the possession of an undivided one half of a tract of land. On the 1st of August, 1857, the land was conveyed to one Mary Ann Manchester, the wife of George W. Manchester, by a deed of grant, bargain, and sale. Manchester and his wife immediately entered into possession, occupied the land as a homestead, and continued to reside in a dwelling-house thereon until the death of the wife on the 3d of April, 1862. On the 27th of April, 1861, Manchester filed a declaration of homestead on the land, properly executed, acknowledged, and recorded, as required by the act of April 28, 1860. After the death of Mary Ann Manchester, George W. Manchester married a second wife. On the 3d of April, 1868, they executed an abandonment and conveyance of the homestead property to one Ward, under whom the defendants claim. The abandonment and conveyance were executed by the second wife in the name of Mary Ann Manchester, which was not her true name. The plaintiff is the only child of George W. and Mary Ann Manchester. The court, after finding the facts as above stated, found as a conclusion of law that the defendants are the owners in fee-simple, and entitled to the possession of the land, and that the plaintiff is not entitled to any part of the same. *Held,* that the question of ownership and right of possession was properly treated as a conclusion of law.

LXXI. CAL.—18

Id. — Act of April 28, 1860 — Surviving Child Entitled to One Half. — Under section 4 of the homestead act of April 28, 1860, a homestead selected by a husband and wife from their community property; upon the death of either of the spouses prior to the amendment of the act in 1862, descended, one half to the survivor, and the other half to the legitimate child or children of the deceased. In such a case, no action on the part of the Probate Court is necessary to vest the title in the latter.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*Rhodes & Barstow*, for Appellant.

*Flournoy & Mhoon, Joseph Rothschild*, and *Tully R. Wise*, for Respondents.

Searls, C. — Action of ejectment to recover possession of the undivided one half of a portion of fifty-vara lot No. 469, in the city and county of San Francisco.

The cause was tried by the court, written findings filed, and judgment entered for defendants, from which judgment, and from an order denying a motion for a new trial, plaintiff appeals.

George W. Manchester and Mary Ann Manchester were husband and wife. On the first day of August, 1857, the land in question was conveyed to Mary Ann Manchester, by deed of grant, bargain, and sale, and thereupon Manchester and wife entered into possession and occupied the same as a homestead, and continued to reside in a dwelling-house thereon, and to occupy the premises, except as hereinafter stated, until the third day of April, 1862, when the said Mary Ann departed this life.

On the twenty-seventh day of April, 1861, George W. Manchester filed in the recorder's office of the city and and county of San Francisco his declaration of homestead, executed and acknowledged in due form, as re-

quired by the provisions of the act of April 28, 1860, describing the premises in controversy, and whereby the homestead continued to exist as such under said act. The value thereof never exceeded five thousand dollars.

After the death of the said Mary Ann Manchester, George W. Manchester married a second wife, and on the third day of April, 1868, joined with her in an abandonment and conveyance of the homestead property in due form to Isaac M. Ward, under whom the defendants claim the property in question by sundry mesne conveyances, all of which were duly recorded.

The second wife executed the deed and declaration of abandonment in the name of Mary Ann Manchester, the first wife, which was not her true name.

Plaintiff is the only child of George W. and Mary Ann Manchester, or either of them, who survived the said Mary Ann Manchester, and was under the age of twenty-two years when this action was brought. A small portion of the lot was sold by Manchester and his first wife, which, however, cannot affect the case.

The court found, *as a conclusion of law,* "that the defendants are the owners in fee-simple, and entitled to the possession of the same; and that plaintiff is not entitled to any part of the same, or to any damage for the withholding thereof."

We are asked to determine whether the foregoing is an ultimate fact to be found by the court as such, or a conclusion of law to be drawn from the facts as found.

The line of demarkation between what are questions of fact and conclusions of law is not one easy to be drawn in all cases.

It is quite easy to say that the ultimate facts are but the logical conclusions deduced from certain primary facts evidentiary in their character, and that conclusions of law are those presumptions or legal deductions which, the facts being given, are drawn without further evidence.

This does not, however, quite meet the difficulty. We deduce the ultimate fact from certain probative facts by a process of natural reasoning. We draw the inference or conclusion of law by a process of artificial reasoning, but this last process is often in such exact accord with natural reason, that the distinction is scarcely appreciable.

If ultimate facts were found only from direct evidence to the very fact, the distinction between them and conclusions of law could be easily drawn, but as they are to a great extent presumed from the existence of other facts, they are conclusions reached by argument, by reason,— are results deduced from an inferential process, in which the evidentiary facts become the premises and the ultimate fact the conclusion; and this process by which ultimate facts or presumptions of fact are reached differs from presumptions of law only in this, that the latter "are reduced to fixed rules, and constitute a branch of the particular system of jurisprudence to which they belong"; the former, being "merely natural presumptions, are derived wholly and directly from the circumstances of the particular case by the common experience of mankind, without the aid or control of any rules of law whatever." (1 Greenl. Ev., secs. 44–48.)

"A presumption of fact is the natural connection of one fact with others by a combined process of proof and argument; a presumption of law is a similar connection artificially made by annexing a rule of law or legal incident to a particular fact proved." (Burrill on Circumstantial Evidence, p. 52.)

The result reached by a presumption of law may be a *fact* equally with that attained by a deduction of the same *fact* from the existence of other and evidentiary facts.

It is the *process* by which the result is attained which is or may be different, and the tribunal through which such result is reached that differs, rather than the result itself.

An act, deed, circumstance, or event is none the less a *fact* because reached as a conclusion of law.

Sanity or insanity, guilt, innocence, fraud, and negligence, are all facts, and whether their existence or non-existence is reached by a process of natural reasoning or by artificial process known as *conclusion of law* does not in the least alter their *status* as facts.

Suppose A sues B for services performed. The latter pleads payment. Here payment becomes the ultimate fact to be established. B proves that he employed a large number of men, and was accustomed to make weekly payment; that A was observed among others at the time and place where payment was made; that a considerable period has elapsed since A left the employ of B, during which time the former made no claim,— these are circumstances from which as evidentiary facts a jury may presume the ultimate fact of payment, but the presumption is one of *fact*, and not of law.

Again, suppose the same case, but that the time prescribed by the statute of limitations in bar of the action has run.

The law steps in and presumes payment. The result reached may be the same, but it is reached by a different process.

Again, the same fact may be found to exist as a deduction from other facts, which, for that purpose, are treated as evidentiary, or the law will take such evidentiary facts, not as evidence in the sense in which we use that term when applied to the investigation of facts, but as a basis from which to presume the existence of the ultimate fact or conclusion.

We have no doubt but that the terms "title" and "owner," considered in the abstract, are facts, and may be found as such.

The question which we are to determine, Who has the title,—who is the owner? is quite a different one, and will usually depend, not upon the natural deductions from

the facts in proof, but upon the application of those legal principles found to apply justly to all like cases, and when necessary and thus applied to work out a result, the conclusion is one of law, or a mixed question of law and fact.

To illustrate: A and B, parties to an action tried by a jury, each holds a conveyance in all respects regular and sufficient in form to convey the legal title, executed and delivered at different periods by the holder of the paramount title.

These facts established, and manifestly, as we think, it would be the duty of the court to find as a conclusion of law that the title vested in the one who first received a conveyance.

Such duty arises, not because title is or is not a fact, but because it cannot be determined by the application of the process of reasoning adopted for the establishment of facts, pure and simple, and must be determined by the application of the process of artificial reasoning adopted by the law; and when thus determined, we designate the result a conclusion of law.

If we have made our meaning clear, we have conveyed the impression that in legal proceedings it is in many cases the means by which the result is to be reached, which must determine whether a given conclusion is one of fact or of law.

If, from the facts in evidence, the result can be reached by that process of natural reasoning adopted in the investigation of truth, it becomes an ultimate fact, to be found as such. If, on the other hand, resort must be had to the artificial processes of the law, in order to reach a final determination, the result is a conclusion of law.

A court of original jurisdiction, in determining issues of fact without the interposition of a jury, must of course apply the law so far as it relates to the admissibility and weight to be given to evidence, but beyond that, it simply

finds the facts as a jury would do in the case of a special verdict.

This accomplished, and the facts as found are subject to such intendments or conclusions of law as would apply to a special verdict.

Applying this rule to the case at bar, and we are of opinion the court below properly treated the ownership and right to possession of the demanded premises as a conclusion of law to be deduced from the facts as found.

The main question in the case is this: Did the plaintiff upon the death of her mother, Mary Ann Manchester, on the third day of April, 1862, succeed to the ownership of the undivided one half of the demanded premises, or did the title thereto vest in George W. Manchester, her father, as survivor of said Mary Ann Manchester, deceased?

The court below found, as we think properly, that the premises were community property of George W. and Mary Ann Manchester, or rather found facts from which this conclusion must be drawn.

Under the homestead act of 1851, no declaration, acknowledgment, or record was necessary to constitute a homestead.

It consisted of a quantity of land, together with the dwelling-house thereon and its appurtenances, not exceeding in value the sum of five thousand dollars, to be selected by the owner thereof. (Stats. 1851, p. 296.)

Occupancy of the premises by the family was treated as presumptive evidence of dedication to homestead purposes, and was notice to all the world. (*Taylor* v. *Hargous*, 4 Cal. 268; S. C., 60 Am. Dec. 606.)

It was necessary that such residence or occupancy as a family residence should be with the good faith intention to dedicate the premises to the purposes of a homestead, in order to impress upon them that character. (*Holden* v. *Pinney*, 6 Cal. 234; *Moss* v. *Warner*, 10 Cal. 296.)

The homestead thus dedicated under the act of 1851 was exempt from forced sale, and could only be conveyed in the manner prescribed by the statute.

The statute did not in terms define the character of the estate which the husband and wife enjoyed in the homestead property during the existence of the marital relation. It did provide that upon the death of the head of the family the homestead and other property exempt from forced sale should be set apart by the Probate Court "for the benefit of the surviving wife and his own legitimate children, and in case of no surviving wife or his own legitimate children, for the next heirs at law."

As might be expected, the Supreme Court was repeatedly called upon to define the estate held by the husband and wife in the homestead.

In *Taylor* v. *Hargous*, 4 Cal. 273, it was said: "As soon as a place acquires the nature of a homestead, the nature of the estate becomes changed without reference to the manner in which the title to the property originated, whether it was the separate estate of either husband or wife, or the common property of both. It is turned into a sort of joint tenancy, with the right of survivorship at least as between husband and wife."

In *Cook* v. *McChristian*, 4 Cal. 23, the same general doctrine was enunciated.

In *Reynolds* v. *Pixley*, 6 Cal. 167, the court expressed its regret that no provision had been made in the act of 1851 for recording the homestead, and alluded to the law as " a fruitful source of fraud and perjury."

In *Poole* v. *Gerrard*, 6 Cal. 73, and in *Revalk* v. *Kraemer*, 8 Cal. 66, the doctrine that the homestead is a joint estate of husband and wife, with right of survivorship, is recognized as well as in all other cases in which the question arose prior to *Gee* v. *Moore*, 14 Cal. 472.

In this last-mentioned case, the court (Field, C. J., delivering the opinion, concurred in by Baldwin, J., and Cope, J.) reviews the former cases, compares them with

the constitution and statute, and in referring to the law as announced in *Taylor* v. *Hargous, Poole* v. *Gerrard,* and *Revalk* v. *Kraemer,* says: "This doctrine has never met the approbation of the profession, and is not warranted by any language of the constitution or the statute. There is nothing in the nature of the homestead right or privilege which justifies its designation as such an estate.

" The right or privilege has no single feature resembling a joint tenancy. The estate rests where it existed before the premises were appropriated as a homestead.

" The appropriation of them confers a right upon the wife to insist that their character as a homestead shall continue until she consents to the alienation, or another homestead is provided, or they are otherwise abandoned.

" The wife, if surviving her husband, takes the homestead, not by virtue of any right of survivorship arising from the alleged joint tenancy, but as property set apart by law from her husband's estate for her benefit, and that of his children if there be any. In the same way other property exempt from forced sale is set apart to her."

This decision was rendered in October, 1859.

At the next session of the legislature the homestead act of April 21, 1851, was amended (Stats. 1860, p. 311) so as to require homesteads to be selected by the husband or wife, or both of them, or other head of a family, by a declaration in writing, executed, acknowledged, and recorded as in the statute provided.

Persons holding homesteads under former acts were allowed one year within which to file for record their declaration, and if not so filed, the homestead was deemed to have been abandoned.

The declaration in the case at bar was executed and filed within the year.

By section 1 of this amendatory act, it was provided that " from and after the filing for record of said declaration, the husband and wife shall be deemed to hold

said homestead as joint tenants; and all homesteads heretofore appropriated and acquired by husband and wife under the act to which this act is amendatory shall be deemed to be held by such husband and wife in joint tenancy."

Section 4 of the amendatory act provided that "the homestead and other property exempt from forced sale shall, upon the death of either husband or wife, be set apart by the Probate Court for the benefit of the surviving husband or wife, and his or her legitimate children."

As before stated, Mary Ann Manchester died in 1862, before the act of that year on the same subject took effect, and the rights of the parties are to be determined as fixed by the act of 1860.

Under section 1 of the act of 1860, standing by itself, the husband and wife became and were joint tenants in the homestead, with right of survivorship, and all other incidents which the term implies.

Doubtless in some instances the relation was wanting in some of the unities which at common law were requisite to such an estate. We know of no reason, however, why the legislature, in its wisdom, may not create such an estate, without having at hand all the material requisite under the common law.

We suppose that branch of the government might enact that a linear foot should consist of thirteen inches, and that the act would not be void because ordinarily twelve inches have indicated such a measure.

The real question is not what section 1 standing alone imports, but is it modified, and its effect as a statute of descent controlled, by section 4 of the same act?

Did section 4 regulate and establish the line of descent or succession of the title to the homestead otherwise than as it would have passed under section 1 standing alone?

*Rich* v. *Tubbs*, 41 Cal. 36, was a case in which Tubbs and wife acquired a homestead under the act of 1860.

Tubbs died, and the Probate Court set aside the homestead property for the use of the family of the deceased, consisting of the widow and two children.

The widow married Rich, and brought an action against the children to quiet title, which was decided in her favor in the court below.

On appeal the judgment was affirmed, upon the ground that the record failed to show that the husband died prior to the passage of the act of 1862, under which last-mentioned act the surviving husband or wife became entitled to the homestead. The court held:—

1. That the act of the Probate Court in setting apart the homestead for the use of the family of the deceased husband, under the act of 1860, did not change nor transmit title; that the effect of such order is merely to relieve the property from administration, that it does not constitute assets of the estate to be administered, and that it leaves the title where it found it, to be determined by claimants thereto in another forum.

2. That although section 1 of the act of 1860 denominates the husband and wife joint tenants, yet that section is so modified by section 4 that they are not such in the full definition of the common-law term, and that under the latter section the children take some interest by inheritance from their deceased father or mother.

The precise interest thus taken, it was said, was not in that case necessary to be determined.

In *Estate of Headen,* 52 Cal. 294, the court, in referring to *Rich* v. *Tubbs,* said: "The fourth section of the homestead act of 1860, which was involved in that case, is clearly a statute of descent and distribution, as applicable to property which had been appropriated as a homestead."

In *Herrold* v. *Reen,* 58 Cal. 443, the doctrine of *Rich* v. *Tubbs* is referred to and approved.

There can be no question but that the first section of

the act of 1860, standing alone, creates a joint tenancy in the homestead between husband and wife, with all the incidents and consequences which the term implies, including its principal incident of the *jus accrescendi*.

But in the light of the construction which has been given to section 4 of the same act by this court, we are constrained to hold that such section modifies the joint tenancy, so that upon the dissolution of the marital relation by death, prior to the amendment of the act in 1862, one half of the homestead descends to the survivor and the other half to the legitimate child or children of the deceased.

This result follows from the theory that section 4 of that act was in effect a statute of descent, regulating the succession, and that no act on the part of the Probate Court was necessary to or could change the title, as was said in *Rich* v. *Tubbs, supra*, and in *Estate of Headen, supra*.

It follows from this construction that upon the death of Mary Ann Manchester on the third day of April, 1862, the undivided one half of the homestead property descended to and vested in her only child, the plaintiff herein, and that, as the statute is one of descent regulating the succession, no action on the part of the Probate Court was necessary to vest the title in the latter.

It results from these views that the conclusion of law by the court below was erroneous, for which error the judgment and order appealed from should be reversed, and the court directed to enter judgment upon the findings in favor of plaintiff for the undivided one half of the premises described in the complaint.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the judgment and order are reversed, with di-

rections to the court below to enter judgment in favor of plaintiff for the undivided one half of the premises described in the complaint, and for the rents and profits thereof as found by the court.

Rehearing denied.