DANFORTH, Petitioner, v. COYNE, Respondent.

(207 N. W. 79)

(File No. 6139.   Opinion filed December 22, 1925.)

1. **Elections—Ballot—First Protesting Proposal Entitled to Occupy Minority Column on Primary Ballot.**

   In view of Rev. Code 1919, Sec. 7098, first protesting proposal is entitled to occupy the third or minority column on the primary ballot.

2. **Elections— Conventions— Proposals— Filing of Protesting Proposal Before State Proposal Meeting Adjourned Held Valid; "Following."**

   Minority proposal in behalf of candidate for Governor, filed before state proposal meeting adjourned was not invalid; "following" as used in Rev. Code 1919, Sec. 7108, merely specifying ultimate extremity of time after which no minority proposal can be received.

3. **Elections—Candidates—Protesting Proposal Not Containing or Having Attached Thereto Declaration of Candidate Not Entitled to be Filed.**

   In view of Rev. Code 1919, Secs. 7098, 7107, 7118, subd. (c), 7123, 7124, representative proposal offered for filing, which does not contain or have attached thereto declaration of some candidate, is not entitled to be filed.

4. **Mandamus—Actions—Sufficiency of Allegations Properly Challenged by Demurrer and Motion to Quash.**

   In mandamus to require secretary of state to file protesting proposal and to certify same to county auditors, whereby summary of principles and name of petitioner might appear on primary ballot, sufficiency of allegations of petition were properly challenged by demurrer and motion to quash.

5. **Mandamus—Trial—That Insufficiency of Petition Was Not Called to Attention on Oral Argument Held Not to Permit Court to Issue Mandate Notwithstanding.**

   In mandamus, if it appears to the Supreme Court on record and pleadings that petition does not present sufficient allegations to justify issuance of mandate, the court should not issue mandate, though particular insufficiency, raised by pleading, was not called to attention on oral argument.

6. **Mandamus—Protesting Proposalmen—Petition must Affirmatively Show Facts Showing That Signers of Proposal Were "Dissenting Proposalmen;" "Protesting Proposalmen."**

   In view of Rev. Code 1919, Secs. 7098, 7107, 7108, 7123, in mandamus to require secretary of state to file protesting proposal, and certify it to county auditors, petitioner must show

facts from which it may be determined that signers of his proposal were dissenting proposalmen or protesting proposalmen, such phrases being synonymous; whether a proposalman is a dissenting proposalman being a question of law.

7. **Mandamus—Pleadings—Petition Held to State Conclusion as to Matter of Law.**

In mandamus to require secretary of state to file protesting proposal, and certify it to various county auditors, allegations that proposal was signed by six elected, qualified, and acting dissenting state proposalmen **held** petitioner's conclusion, and insufficient as an allegation of fact.

8. **Elections—Protesting Proposalmen—What is Protesting or Dissenting Proposalman Within Statute Stated.**

Protesting or dissenting proposalman, entitled to sign minority proposal under Rev. Code 1919, Sec. 7108, must have opposed in the proposal meeting principles, paramount issues and summary of principles promulgated by majority, or at least not voted for them, and it is not sufficient that he voted against the majority nominee.

9. **Mandamus—Pleadings—Facts Alleged Held Insufficient to Show Whether Signers Were Protesting Proposalmen Within Statute.**

In mandamus to require secretary of state to file protesting proopsal, petition, silent as to action signers thereof took with reference to platform principles, and issues promulgated by majority, was insufficient to show whether signers were protesting or dissenting proposalmen within Rev. Code 1919, Sec. 7108.

Original mandamus by George J. Danforth against C. E. Coyne, as Secretary of State of South Dakota. Motion to quash alternative writ granted.

*Martens & Goldsmith,* of Pierre, for Petitioner.

*Buell F. Jones,* Attorney General, and *R. F. Drewry* and *Benj. D. Mintener,* Assistant Attorneys General, for Respondent.

CAMPBELL, J.   George J. Danforth filed in this court his petition supported by affidavits alleging in substance that he is a qualified elector of this state, possessing all the legal qualifications necessary to fill the office of United States Senator; that the Republican state proposal meeting for nomination of candidates for office as provided by law was held at Pierre December 1, 1925, and adjourned at 2:15 a. m., December 2, 1925; that immediately following said adjournment a protesting proposal signed by six proposalmen entitled to a vote in said meeting was offered for

filing in the office of the secretary of state at 2:15 a. m., December 2, 1925, proposing minority principles for party platform and proposing the name of petitioner as minority candidate for the office of United States Senator; that the officer legally in charge of said office received and retained said proposal in said office, but refused to file the same on the ground that a minority proposal had previously been filed in behalf of C. E. Coyne as a candidate for Governor at about the hour of 1 o'clock a. m., December 2, 1925, and about one hour previous to the adjournment of the state proposal meeting.

The petition further alleges that the Coyne proposal was attempted to be refiled in the office of the secretary of state after the adjournment of the state proposal meeting, but alleges that said attempted refiling was subsequent to the offer of petitioner's proposal. The allegation is also made in the petition that the Coyne proposal did not contain or have attached when offered for filing a declaration of candidate signed by the said Coyne as required by law; that the petitioner Danforth does not desire to accept or adopt the platform or principles of the Coyne proposal; and that the Danforth proposal was the first and only protesting proposal filed following the adjournment of the state proposal meeting. Attached to the petition were affidavits detailing the facts as they were claimed by petitioner to exist with reference to the offer of his proposal for filing, and particularly with reference to the question of priority between said offer and the second filing or refiling of the Coyne proposal, and the prayer was for a peremptory writ of mandamus requiring the secretary of state to file the protesting proposal in behalf of petitioner as and for the first protesting proposal, and to certify the same accordingly to the various county auditors, whereby the summary of principles and name of petitioner might appear in column 3 on the Republican primary ballot for the ensuing primary election. Thereupon an alternative writ of mandamus issued out of this court directed to the respondent, as secretary of state pursuant to the prayer of the petitioner.

At the return day fixed in the alternative writ, respondent, secretary of state, demurred to the petition and moved to quash the alternative writ upon the ground:

"That it appears upon the face of said application and affi-

davits that sufficient facts are not therein stated to constitute a cause of action or to entitle the petitioner to the relief demanded."

Respondent also returned by way of affirmative defense that, before petitioner's proposal was offered for filing, there was filed in the office of the secretary of state at 1 o'clock a. m., December 2, 1925, a representative minority proposal proposing C. E. Coyne as candidate for Governor and that said Coyne's proposal was again offered for filing and refiling at 2:15 a. m., December 2, 1925, after the adjournment of the state proposal meeting, and at least 10 minutes before the Danforth proposal was offered for filing whereby the Coyne proposal was the first minority proposal offered for filing to the exclusion of the Danforth proposal. Attached to the return are affidavits supporting the contention of respondent as to the question of priority in time between the second filing or refiling of the Coyne proposal and the offer of the Danforth proposal.

Section 7098, Rev. Code 1919, reads, in part, as follows:

" * * * Provided, that but one set of protesting representative proposals shall be received and placed on each party ballot and, in case of more than one set of protesting representative proposals offered for filing, the one first offered to the secretary of state of such protesting state proposals, and the one first offered to the county auditor of such protesting county proposals, shall be received and filed. * * * "

[1, 2] Both the Danforth and Coyne proposals cannot occupy the third or minority column on the primary ballot because both have filed different "principles" and "summary of principles" designed to become the regular party platform if adopted at the primary. And as appears from the statute above quoted the rule, at least where no question of organization of a minority by a "leader" (section 7098, Rev. Code 1919) arises, is, "First come, first served," as has been recognized by this court in State ex rel Martens v. Coyne, 47 S. D. 119, 196 N. W. 497. Therefore, if there was a valid filing of the Coyne proposal before the offer of the Danforth proposal, the Danforth proposal was properly refused filing on that ground. In this connection the claim is made that the 1 o'clock filing of the Coyne proposal is necessarily invalid because the state proposal meeting had not then adjourned. The statute pertaining thereto is that portion of section 7108, Rev. Code 1919, reading as follows:

" *   *   *  Provided, that if on or before the third Tuesday in December following said party state proposal meeting, one protesting proposal signed by five or more dissenting state proposalmen entitled to vote in the state proposal meeting, shall be filed with the secretary of state, it shall be the duty of the secretary of state to also receive and file the same, and cause said protesting representative proposal to be certified to the county auditor, to have the summary of principles and names of candidates printed in column three on the official party primary ballot. * * * "

It is the petitioner's claim that, by virtue of the word "following," no minority representative proposal can be received or filed until the party state proposal meeting has adjourned and ended. With this contention we cannot agree. It is our opinion that the entire phrase "following said party state proposal meeting" modifies the word "December," and that the words "on or before the third Tuesday in December following said state party proposal meeting" merely specify the ultimate extremity of the period of time after which no minority representative proposal can be received or filed, and the opposite or earliest extremity of said period of time for filing is not specified by the statute. The first action of the proposal meeting is to "promulgate principles as representative proposals for party platform," and then to "select one paramount national issue and one paramount state issue from such party platform principles and prepare summary of principles for ballot heading." Section 7108, Rev. Code 1919. And we see no reason why five or more dissenting state proposalmen may not withdraw from the state proposal meeting, if they deem proper, at any time, and propose principles, summary of principles, and candidates of their own as a minority, and we see no reason in the law why the result of such minority action in the form of a representative minority proposal could not be certified and filed prior to the adjournment of the state proposal meeting, provided the same were in all other respects entitled to filing.

From this view, it follows that the 1 o'clock filing of the Coyne proposal was equally as valid as a filing thereof after the adjournment of the state proposal meeting, and the controversy between petitioner and respondent as to priority between the offer of petitioner's proposal and the second filing or refiling of the Coyne proposal becomes entirely immaterial.

[3]   Another question arises, however, as to the validity of the filing of the Coyne proposal.  It is admitted by all parties that at the time of the filing of the Coyne proposal at 1 o'clock a. m., and at the time of the second filing or refiling thereof about 2:15 a. m., said proposal did not contain nor was there attached thereto a "declaration" by the said Coyne in the form prescribed by law that if nominated and elected he would qualify and adhere to the principles proclaimed in the proposal and obey the party recall if invoked against him.  It is also admitted that the Coyne proposal contained the name of no candidate for any office excepting that of Coyne for Governor.  Section 7098, Rev. Code 1919, defines "declaration" as follows:

" *   *   *   The word 'declaration' shall mean a statement, as hereinafter provided, signed by the party candidate and attached to his filing papers, pledging himself to qualify and obey the party recall, before his name shall appear on the official primary ballot, or in case of an appointive office as provided herein before the appointment shall be made.   *   *   * "

Subdivision (c), § 7118, Rev. Code 1919, provides as follows:

"(c)   Each individual proposal petition for a party independent candidate shall have affixed thereto the executed declaration of such candidate in the form provided in section 7117 before his petition shall be entitled to be filed in the office of the secretary of state or county auditor, as the case may require."

Section 7107, Rev. Code 1919, having reference to the party county proposal meeting, provides, in part, as follows.

" *   *   *   The result, or results, of the meeting shall be certified on the regular form of blanks for 'Representative Party Proposal,' provided in this chapter, by the chairman and secretary of the meeting or by five or more protesting precinct proposalmen and filed with the county auditor, together with signed declarations by the proposed candidates."

Sections 7123 and 7124, referring to both state and county representative proposals, read as follows:

"Sec 7123.  *Signing of Representative Proposal and Declaration.*   To the form of representative proposal the chairman and secretary or the five or more protesting county or state proposalmen, in favor thereof, shall affix their signatures with pen and ink or with indelible pencil, and each shall add, after his name, the

name of the county in which he resides, the precinct, his post office address and date of signing. Following the signatures there shall be attached to and filed, with the proposal, the above declaration signed by the candidates proposed, each giving his residence by county and precinct and post office address; such declaration may be signed separately by each candidate and attached to the original proposal."

"Sec. 7124. *Filing-Fees.* No fees shall be required of candidates for filing of individual proposal petitions, or representative proposals. The filing of a representative proposal or individual candidate proposal petition within the time and in the manner and form provided in this chapter, together with the declaration of the candidate, shall be sufficient to require that his name be printed upon the primary ballot, provided an opposition candidate, within the party, has been proposed by timely filing."

Under the sections above quoted we are of the opinion that it is the plain intention of the law that the declarations of candidates shall be attached, not only to individual proposals, but to state and county representative proposals, before said proposals are entitled to be filed, and when, as in the case of the Coyne proposal, a representative proposal is offered for filing which does not contain or have attached thereto the declaration of any candidate thereby sought to be nominated, such proposal is not entitled to be filed. It follows that there was not a valid filing of the Coyne proposal either when first offered at 1 o'clock or when offered for a second time after the adjournment of the state meeting. As to what the situation might be if a representative proposal, state or county, majority or minority, proposing the names of several candidates for various offices, is offered to the proper official for filing with the declarations of some of the candidates therein named attached, but the declarations of the remainder lacking, we specifically refrain from expressing any opinion; such situation being in no manner involved in this case.

[4] From the foregoing, it is apparent that the affirmative defense set up in the return of prior filing of a minority representative proposal before the offer of petitioner's proposal for filing cannot be sustained. The question then arises as to whether or not the petitioner has affirmatively shown himself entitled to the filing of his proposal; the sufficiency of his allegations being

challenged upon this record by the demurrer and motion to quash hereinbefore quoted.

In fairness to counsel who presented this matter, we desire to state that no written or printed argument was filed herein and of the time devoted to oral argument a large part was consumed by reading of affidavits with reference to a controversy of fact as to priority in time between the offer of petitioner's proposal and the second filing or refiling of the Coyne proposal, which, in the light of this opinion, becomes utterly immaterial. The remainder of the time was devoted to argument upon the question raised by respondent's return and hereinabove considered; namely, whether or not the filing of the Coyne proposal, in so far as it was prior to the offer of petitioner's proposal, was in all respects valid, so as to exclude the petitioner's. The views of counsel were not presented for the enlightenment of this court in behalf of either party on the proposition raised by the demurrer and motion to quash; namely, the affirmative sufficiency of petitioner's allegation to justify the ruling he seeks, assuming there was no prior valid filing.

It is the established practice of this court, evidenced by a long line of decisions, that, upon an appeal from a lower court, assignments of error, though appearing in the brief, will be deemed abandoned by failure to urge the same in the printed argument. It might seem upon some analogous principle that in the instant case, the affirmative sufficiency of the petition not having been expressly argued, even though properly raised by the pleadings, this court might relieve itself from determining that question. Upon consideration, however, we believe that is not the case. This is not a proceeding appellate in its nature, and the reason supporting the rule in reference to appellate procedure does not have application. This is an original proceeding here, sufficiently charged with public interest so that this court has seen fit to take jurisdiction thereof. The mandate of this court is sought by petitioner to direct affirmative action on the part of a constitutional officer of this state. The legal sufficiency of the allegations of the petition are properly challenged by the pleadings.

[5] If it appears to this court upon the record and pleadings that the petition, in fact, does not present sufficient allegations to justify this court as a matter of law in issuing its man-

date, should this court issue such mandate notwithstanding, and then seek shelter and justification behind the proposition that the particular insufficiency, while raised by the pleadings, was not called to the attention of the court upon oral argument? We think not. This matter might, with perfect propriety have been submitted without any brief or argument, whatever, either printed, written, or oral. Upon an original proceeding in this court it is the duty of the court to act, or refuse to act, as the court conceives the law to require, upon the pleadings and record before it, and absence of argument, pro or con, upon any particular point involved, should no more control or justify the court in acting or refusing to act than should entire absence of argument, or erroneous argument thereon.

[6] The statute provides that a minority or protesting or dissenting "representative proposal" shall be signed by "protesting proposalmen" (section 7098, Rev. Code 1919); "five or more protesting precinct proposalmen" (section 7107, Rev. Code 1919); "five or more dissenting state proposalmen" (section 7108, Rev. Code 1919); "five or more protesting county or state proposalmen" (section 7123, Rev. Code 1919).

To entitled himself to the writ sought, the petitioner must affirmatively show facts from which it may be determined that the signers of his proposal were "dissenting proposalmen" or "protesting proposalmen," which phrases we view as synonymous. What constitutes a "dissenting proposalman" is, we believe, a question to be determined upon sound construction and interpretation of the statute and whether a proposalman is a "dissenting proposalman" is a question of law, to be answered by applying a proper construction of the statute to the conduct of such proposalman.

The distinction between an ultimate fact and a conclusion of law is frequently difficult of determination and, as pointed out by the Supreme Court of California, the question must often be determined according to the means by which the result is reached.

"If, from the facts in evidence, the result can be reached by that process of natural reasoning adopted in the investigation of truth, it becomes an ultimate fact, to be found as such. If, on the other hand, resort must be had to the artificial processes of the law, in order to reach a final determination, the result is a conclusion of law." Levins v. Rovegno, 71 Cal. 273, 12 P. 161.

By no process of natural reasoning, independent of an interpretation of our primary law, can one arrive at any ultimate fact that an individual is a "dissenting proposalman." There is not even a specific definition of the term in the law, whereby it might be assumed that an allegation that a man was such "dissenting proposalman" amounted, at least upon demurrer, to an allegation that he had performed the acts or accomplished the course of conduct, specified in such definition. The existence of the status of "dissenting proposalman" depends entirely upon the intendment of the law, to be determined by a liberal interpretation of the whole statute according to its spirit, intent, and purpose (section 7097, Rev. Code 1919), and then the measuring of the conduct and acts of the individual by the rule of such intendment. We believe therefore that it is essential, if the petitioner here is to succeed, that his petition contain apt and sufficient allegations of facts from which it may be determined that the signers of his proposal, as a matter of law, are entitled to rank as "dissenting proposalmen."

[7] The allegations of the petition in that regard are that the proposal which petitioner seeks to have filed was signed "by six elected, qualified, and acting, dissenting state proposalmen, entitled to a vote in said Republican state proposal meeting, all of whom had voted against the majority nominee for United States Senator of said proposal meeting."

It is true that the petition in words describes said signers as "dissenting state proposalmen," but it follows, from the view above set out, that such statement is the petitioner's conclusion as to a matter of law as distinguished from an allegation of fact, and the only fact alleged from which this court can determine whether or not said signers are in contemplation of law 'dissenting proposalmen" is that each of them voted against the majority nominee for United States Senator of said state proposal meeting, for which office they now seek to propose and nominate the petitioner.

Is this single allegation of fact sufficient in this regard? We are of the opinion that it is not. So far as anything can be said to be plain or apparent in our present primary law, we are of the opinion that it is clear upon the spirit, intent, and letter of the law as a whole that, as to matters of party organization and

nomination, the chief things sought to be given expression and submitted to party electors are platforms and principles and that the matter of candidates is subordinate thereto. If a group of men are satisfied with the principles for party platform as promulgated by the majority representative proposal, but are dissatisfied with one of more of the candidates named thereunder, their proper course in the contemplation of the law is to nominate opposing candidates by individual petition. It is the contemplation of the law that column 3 of the official primary ballot, if occupied at all, shall be occupied by the principles and candidates of a group of proposalmen who, in good faith, differ from the majority of the proposalmen, not only as to selection of individual candidate or candidates, but as to what should be the party platform and principles, and who have, in good faith, themselves, promulgated in the manner pointed out by the law a set of principles opposed to those promulgated by the majority. A minority representative proposal could not be filed which merely nominated candidates for office without proposing party principles.

[8] Before a proposalman can be held to be a protesting or dissenting proposalman within the meaning of the law, we think it must appear that such proposalman opposed in the proposal meeting the "principles as representative proposals for the party platform," and "paramount issues," and "summary of principles" as promulgated by the majority, or at least it must affirmatively appear that he did not vote for them, and, in the absence of such showing, no proposalman is entitled to go out and seek to participate in the occupancy of the minority column with a set of principles and issues to be presented to the party electors in opposition to those promulgated by the majority.

[9] The petition in this case being entirely silent as to what action the signers of the proposal sought by petitioner to be ordered filed took with reference to the platform, principles, and issues promulgated by the majority, no sufficient facts are alleged from which this court can determine the question of law as to whether or not said signers were protesting or dissenting proposalmen within the meaning of the statute.

The petitioner not having stated sufficient facts to show himself entitled to the relief demanded; the motion to quash upon that ground must be granted, and it will be so ordered.

DILLON, J., absent, and taking no part in this opinion.

GATES, J. (dissenting). I am of the opinion that the allegation in the petition for the writ that the "Danforth for Senator" proposalmen were "dissenting proposalmen" is an allegation of fact and not of a conclusion. The allegation is similar to that contained in Bowler v. First Nat. Bank, 21 S. D. 449, 113 N. W. 618, 130 Am. St. Rep. 725, where this court held that an allegation "that the bankrupt's estate is insolvent" was an allegation of fact and not the allegation of a conclusion and that upon demurrer that allegation must be taken as true.

Agreeing with the disposition made by the majority of the court of the other issues in this case, I think the peremptory writ sought by Danforth should be granted.

SHERWOOD, J. I dissent from that part of the second conclusion in the majority opinion which holds in substance that every "proposal" must have attached to it the "declaration" of at least some of the candidates for office before it can be filed.

The word "declaration" as above used is defined to mean a statement signed by the candidate pledging himself to qualify and obey the party recall. If this law can be said to have a primary purpose, that purpose is clearly to place principles and platform above candidates and partisan declarations. This is clear from the first section of this statute, which expressly provides:

"This statute shall be liberally interpreted and so construed that the spirit, intent or purpose of any section or article shall not be defeated by technical or precedential construction of a word, or by interpolation of words into any section, or otherwise interpreted or construed, in any way, to hinder responsive and responsible party government, which is the purpose of this political party law; and in case of any conflict between the provisions of this chapter and other provisions of this code, effect shall be given to the former." Section 7097, R. C. 1919.

In theory, at least, the platforms are declared and the candidates selected at the state proposal meeting occurring on the first Tuesday in December of each odd-numbered year. Until such platform is declared it would be impracticable, if not impossible, for any one to know whether or not there would be a minority proposal filed.

If, then, there should arise in the convention a real disagreement as to important principles which the party should enunciate, and five or more proposalment who dissented from the majority principles sought to present to the party the principles which they thought should be accepted, I think the statute contemplated that such a minority should have the right to file the paramount issues and principles which they propose, and I do not think the statute contemplated that such right should be withheld because the candidate they desired to name as the standard bearer for their principles was not immediately present to sign his declaration.

The platform then being the primary thing, the candidates, secondary, and the consent of the candidate to serve being at most a minor matter, it seems to me the statute did not contemplate that the minority column should be entirely at the mercy of the men who had the swiftest feet and a candidate waiting; nor does the statute contemplate that the failure of one or more candidates to file his acceptance of a nomination at a particular time, or at all, shall prevent the party from declaring its principles and later placing a ticket in the field.

This view seems to be sustained by the fact that the law expressly provides that while the proposal meeting is to be held on the first Tuesday in December, each candidate has until the close of the 1st day of January, following, in which to file his "declaration" or acceptance. Section 7117, R. C. 1919. Further, each candidate may have his declaration on a separate sheet of paper, signed by himself alone. Section 7123, R. C. 1919. And the only penalty provided by statute for the candidate's failure so to sign and file his declaration, is that his name shall not appear on the primary ballot. Section 7117, supra.

While it is not binding on us, I think we might take judicial notice that, ever since the passage of this law, it has been almost the universal practice to file the platform and paramount issue and thereafter to have the candidates file their separate "declarations," at any time on or prior to January 1st, and have these separate declarations attached to and placed in the file with the proposal. It seems reasonable to me that we give such general practice and interpretation of the law by the public some weight and consideration here.

While it is provided in section 7123, R. C. 1919, as stated in the majority opinion, that "there shall be attached to and filed

with the proposal" the declaration signed by the candidate, it is also provided in the same section that such declaration may be signed separately by each candidate and attached to the original proposal. In common usage the request of a party to have his separate declaration attached to and filed with a petition already on file would be considered complied with, if it was attached to the petition and deposited with it, in its file.

The majority opinion concedes that the spirit and purpose of this law is to make principles and platform superior to candidates, but insists that some of the candidates at least must sign their consent to be candidates and attach that consent to the platform or proposal and file it with and at the same hour and minute the platform is filed; otherwise the officer must refuse to file the platform or proposal, or, if he does file it, such platform and filing are void. In this view, which is paramount;—the platform and principles, or the consent of the candidate to be a candidate? If some of the proposed candidates must sign to make the platform valid, how many must so sign?

I think the majority view upon this point makes the hour and minute of filing the candidate's consent the important feature. It sacrifices substance to form and makes the literal construction and application of one obscure phrase hinder, if not defeat, the purpose of the law.

In my view, this law will be substantially complied with if the platform or proposal is filed as soon as adopted and thereafter at any time before the close of January 1st, following, at such times as they see fit, the candidates deposit with the filing officer their separate declarations, and such declarations are thereupon attached to and placed in the file with the original proposal.

I concur in the result reached in the majority opinion.

Note.—Reported in 207 N. W. 79. See, Headnote (1), American Key-Numbered Digest, Elections, Key-No. 126(5), 20 C. J. Sec. 100; (2) Elections, Key-No. 126(1), 20 C. J. Sec. 109; (3) Elections, Key-No. 126(1), 20 C. J. Sec. 113; (4) Mandamus, Key-Nos. 162, 163, 38 C. J. Secs. 624, 629; (5) Mandamus, Key-No. 172, 38 C. J. Sec. 680; (6) Mandamus, Key-No. 168(2), 38 C. J. Sec. 671; (7) Mandamus, Key-No. 154(5), 38 C. J. Sec. 578; (8) Elections, Key-No. 126(1), 20 C. J. Sec. 112; (9) Mandamus, Key-No. 154(5), 38 C. J. Sec. 590.

On pleading conclusions of law see Bancroft's Code Pleading, Vol. I, pg. 94.